**In re DEER PARK, INC., aka Deer Park Ski Area, a California corporation, Debtor.**

**UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,**

v.

**DEER PARK, INC., aka Deer Park Ski Area, Appellee.**

BAP No. NC–91–1529 RPMe.
Bankruptcy No. 3–83–02547 LK.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on Jan. 21, 1992.

Decided Feb. 19, 1992.

Erik P. Doerring, Asst. U.S. Atty., San Francisco, Cal., for the U.S.

Gerald F. Ellersdorfer, San Francisco, Cal., for creditors' committee.

## OPINION

Before RUSSELL, PERRIS and MEYERS, Bankruptcy Judges.

RUSSELL, Bankruptcy Judge:

The United States of America, Internal Revenue Service ("IRS") appeals a bankruptcy court order designating payments made pursuant to a Chapter 11 liquidating plan to be applied to extinguish "trust fund" tax liabilities before being applied to other tax liabilities. We affirm.

## I. FACTS

The debtor Deer Park, Inc., aka Deer Park Ski Area ("Deer Park") built and operated a Lake Tahoe ski resort adjacent to another ski resort Alpine Meadows of Tahoe, Inc., aka Alpine Meadows Ski Area ("Alpine Meadows"). Gerhard Stoll ("Stoll") was president and controlling shareholder of Deer Park. He lost control to and was removed as president by a secured creditor, Poma of America, Inc. ("Poma"). An involuntary Chapter 11[1] petition was filed to protect the claims of the other creditors. Subsequently, Poma relinquished control and Mr. Stoll was reelected president of Deer Park.

A plan of reorganization was approved on October 16, 1985. Pursuant to that plan, all of Deer Park's assets were sold to Alpine Meadows, who agreed to pay a non-contingent sum of $275,000 plus interest over a three year period, along with a contingent sum of $1,500,000 without interest, out of the cash flow from operations contingent upon the reopening of the Deer Park Ski Area on or before December 4, 1994. Additionally, Alpine Meadows would grant Deer Park a 25% equity interest in the entities operating the Deer Park Ski Area, if and when it reopens, on or before December 4, 1994. The amounts negotiated and the terms for payment were designed to generate the funds necessary to entirely pay out all priority creditors and secured creditors, specifically tax claims owed to the Internal Revenue Service.

Stoll continued to act on behalf of the debtor both before and after plan confirmation without compensation. His primary purpose in doing so was to be relieved of potential personal liability for Deer Park's "trust fund[2]" tax obligations.

---

1. Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. Payroll tax and social security taxes, required by law to be withheld by employers from employee pay checks, 26 U.S.C. §§ 3102(a), 3402(a), are held in trust for the federal government. 26 U.S.C. § 7501(a). These "trust fund" taxes may be recovered directly from the officers and employees responsible for the collection of these taxes as "responsible persons" in

The Chapter 11 reorganization plan provided for payment in full to the IRS from the noncontingent cash payments to be received from Alpine Meadows. Stoll participated with the belief that these payments under the plan would relieve him of any trust fund liability.

On December 15, 1986, after notice and a hearing, an order approving the payment of the priority tax claims under the plan of reorganization was entered. The payments were made in full, the final installment being mailed January 8, 1988, and a "Receipt of Payment and Satisfaction of Claim" acknowledging full satisfaction of the claim was signed by the IRS on January 15, 1988.

At some time subsequent, the IRS detected a clerical error in the tax claim and asserted a claim for the uncollected amount against Stoll for unpaid trust fund taxes. He was notified of this claim on June 14, 1990. The creditors' committee then filed a motion to modify the order for payment of priority claims to include a direction that the past payments be applied first to the trust fund portion of the taxes. The government objected. The bankruptcy court, after a hearing on the motion, granted the order requiring the IRS to first apply tax payments to the trust fund liabilities. The government appeals. We affirm.

## II. ISSUES

Whether the bankruptcy court erred in ordering the IRS to apply payments pursuant to a Chapter 11 liquidating plan to the trust fund portion of the debtor's federal tax liability.

## III. STANDARD OF REVIEW

█ We review the bankruptcy court's factual findings under the clearly erroneous standard, while conclusions of law are reviewed *de novo*. *In re Holm*, 931 F.2d 620, 622 (9th Cir.1991); *In re Acequia, Inc.*, 787 F.2d 1352, 1357 (9th Cir.1986); Federal Rule of Bankruptcy Procedure 8013.

the event that they are not paid to the government. 26 U.S.C. § 6672; *Slodov v. United*

## IV. DISCUSSION

1. *The bankruptcy court has the power to order the Internal Revenue Service to allocate tax payments made to offset "trust fund" tax liabilities.*

In *United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990), the Supreme Court held that a bankruptcy court "may order the IRS to apply tax payments to offset trust fund obligations where it concludes that this action is necessary for a reorganization's success." 110 S.Ct. at 2143.

The Court stated that the power to do so derives from the "residual authority to approve reorganization plans." 110 S.Ct. at 2142, citing § 1123(b)(5) and § 1129, and the authority under § 105 to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Code. *Id.* at 2142. "These statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." *Id.* at 2142.

2. *The distinction of whether the payments were made voluntary or involuntary is of no relevance.*

█ IRS policy permits only taxpayers who "voluntarily" submit payments to the IRS to designate the tax liability to which the payment will apply. Rev.Rul. 79–284, 1979–2 Cum.Bull. 83, modifying Rev.Rul. 73–305, 1973–2 Cum.Bull. 43, superseding Rev.Rul. 58–239, 1958–1 Cum.Bull. 94. The government asserts that the tax payments made by Deer Park were made pursuant to a bankruptcy court order arising out of Deer Park's bankruptcy case and were therefore involuntary. We do not agree with this analysis.

Because conflicting decisions among circuits arose regarding whether payments made pursuant to a Chapter 11 plan were "voluntary" or not, the Supreme Court

*States*, 436 U.S. 238, 259, 98 S.Ct. 1778, 1791, 56 L.Ed.2d 251, 264 (1978).

granted *certiorari* specifically to resolve this very issue.

> We granted certiorari because the First Circuit's conclusion on this issue conflicts with decisions in other circuits.... We affirm the judgement below, *for whether or not the payments at issue are rightfully considered to be involuntary*, the bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan.

*Energy Resources*, 110 S.Ct. at 2142–2143 (citations omitted) (emphasis added). Therefore, the characterization of payments as voluntary or involuntary is no longer relevant in the context of a Chapter 11 plan. We find *Energy Resources* to be dispositive of the issue.

> 3. *The fact that Deer Park's Chapter 11 plan is a liquidating plan does not abrogate the applicability of the holding in Energy Resources.*

■ The government argues that the Supreme Court holding in *Energy Resources* is inapplicable because Deer Park's Chapter 11 plan is a "liquidating" plan and not a "reorganization." We disagree. Such a broad statement fails to recognize that a debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale.[3] The Bankruptcy Code recognizes this in § 1129(a)(11), by providing that liquidation may be contemplated in a valid Chapter 11 plan of reorganization, despite the label "reorganization." Although the word "reorganization" might commonly bring to mind ongoing operations, Congress explicitly placed language providing for liquidation within Chapter 11, which is titled "Reorganization." Had Congress not intended to include liquidation as an acceptable type of reorganization plan, then presumably all provisions dealing with liquidation would fall within Chapter 7, which is specifically titled "Liquidation." We must therefore assume Congress placed this provision in Chapter 11 intentionally.

Liquidation under a Chapter 11 plan is not the same as a Chapter 7 liquidation. A liquidation under Chapter 11 allows the debtor in possession, one who is presumably more familiar with the assets of the debtor's organization and its respective values, the ability to plan for an orderly divestiture of the assets over time as opposed to a Chapter 7 trustee, who is generally less familiar with the debtor's assets. A Chapter 11 plan, even though a liquidating plan, must still conform to the same statutory requirements of any other Chapter 11 reorganization. A liquidating plan is desirable when the debtor in possession can bring about a greater recovery for the creditors than would a straight liquidation under Chapter 7.

The language in *Energy Resources* does not create an exception for a liquidating plan. Even though the Court's language refers to a "reorganization," Deer Park's liquidating plan qualifies as a reorganization under Chapter 11. The government attaches an undue amount of significance to the label "liquidation" without ever addressing any of the underlying policies and rationale behind liquidation under a Chapter 11 plan. We hold that the *Energy Resources* decision applies to a Chapter 11 liquidating plan as it is a valid form of reorganization provided for in the reorganization chapter of the Bankruptcy Code[4].

---

**3.** We do not address the issue of whether the bankruptcy court has the power to order the application of tax payments to trust fund liabilities in a Chapter 7 liquidation.

**4.** Even if we were to adopt the narrower reading of *Energy Resources* as inapplicable to plans of liquidation with no reorganization ongoing operations, the Deer Park plan would still fall within this narrower reading. In the case at bar, the debtor company would, as a part of the plan, retain a 25% equity interest in the operation of the ski resort as negotiated in the agreement to sell the Deer Park assets. The plan provides for the ongoing operation of the ski resort assets, by the buyer, to generate funds to payout the Deer Park creditor claims. The Deer Park business entity would not apparently cease to exist, despite the nonexistence of operating assets.

4. *The allocation of Deer Park's tax payments to trust fund liabilities was necessary for the success of Deer Park's plan.*

The only remaining issue to be resolved is whether the bankruptcy court's finding that allocation of tax payments to trust fund liabilities was necessary for the success of Deer Park's reorganization. We hold that the bankruptcy court's finding was not clearly erroneous.

It is not axiomatic, as the government seems to conclude, that because the plan calls for liquidation, all efforts by Stoll must automatically be unnecessary to the plan. Whether or not one's efforts are necessary to the success of a plan of reorganization can only be determined upon the facts and circumstances of each case, not merely by whether liquidation is contemplated.

The bankruptcy court, in granting the creditors' committee order to apply tax payments to trust fund obligations, found that Stoll's participation was necessary to the success of the plan[5]. This finding was based upon a noticed motion and hearing.

The government's assertion that Stoll is the only person to benefit from the tax allocation is without any support. Yet, there is evidence to support the court's findings. For example, Stoll's initial participation was based on his belief that his potential tax liability would be entirely satisfied by the plan payments to the IRS. This was his only compensation. Further, to secure Stoll's continuing participation and in recognition of Stoll's past efforts, the creditors' committee obtained an order directing the IRS to apply tax payments to the trust fund portion of the tax liability to ensure that Stoll would be relieved of any personal liability. Had the committee not believed that Stoll's continuing involvement was necessary to Deer Park's plan, they certainly would not have obtained the order. The creditors' committee motion states that Stoll provided services and assisted in obtaining the proceeds used to pay the administrative expenses and is continuing to provide services to the estate by his communications and negotiations with Alpine Meadows. Nothing in the record suggests otherwise. We must afford the bankruptcy court's finding deference as required by Bankruptcy Rule 8013.

## V. CONCLUSION

A bankruptcy court may order the IRS to apply tax payments to offset trust fund obligations if it concludes that this action is necessary for a reorganization's success even where the reorganization contemplates liquidation. The bankruptcy court's factual finding that an order of tax payment application was necessary to secure Stoll's participation and, in turn, necessary to Deer Park's reorganization plan was not clearly erroneous. We AFFIRM.

---

5. The transcript of the April 22, 1991 hearing on the motion to apply payments to the trust fund portion stated the court's finding:

THE COURT: Well, It's my understanding—I didn't say so perhaps—but this is in recognition that the services of Mr. Stoll were essential to accomplishing the plan, and the inducement— the inducement to Mr. Stoll to continue services without other compensation was to obtain—see that his personal liability was discharged by payments to I.R.S.

(Appellee's Additional Transcripts of Record, p. 26.)