**In re FLO–LIZER, INC., Debtor.**

**Bankruptcy No. 2–86–01685.**
**EIN No. 31–4414701.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Oct. 22, 1993.

Richard T. Ricketts and E. James Hopple, Columbus, OH, co-counsel for debtor.

Alec Wightman, Columbus, OH.

Brenda L. Dodrill, Asst. U.S. Atty., Columbus, OH.

## ORDER ON MOTION TO DESIGNATE PAYMENTS TO INTERNAL REVENUE SERVICE

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This matter is before the Court upon the Motion of Debtors for Designation of Payment to Internal Revenue Service, and the Notice of Objection to Debtor's Motion filed by the Service ("the IRS"). A hearing to consider this matter took place on October 4, 1993, at which time the parties were afforded the opportunity to present evidence in support of their respective positions.

This Court is vested with jurisdiction pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(O).

### I. Findings of Fact

Debtor filed its petition under Chapter 11 of the Bankruptcy Code on April 30, 1986. Debtor's Third Amended Plan of Reorganization was confirmed on or about December 31, 1988. During this bankruptcy proceeding, the Debtor discontinued its operations, liquidated its assets, and made final distributions to creditors in accordance with the Third Amended Plan of Reorganization.

The IRS held an allowed administrative expense claim in the principal amount of approximately $178,142.00 plus interest and penalties. In or about March 1989, pursuant to agreements reached with Debtor, administrative claimants received approximately 50% of their allowed claims, at which time the IRS received $123,781.31. Payment of the remaining portion of allowed administrative expense claims was delayed due to litigation, and appeals concerning an action between Debtor and the Ciba–Geigy Company. Upon resolution of the final appeal of that proceeding, additional funds were made available for distribution to administrative claimants.

During the Ciba–Geigy litigation, the IRS accrued additional interest and penalties, totalling approximately $130,000.00, on its administrative expense claim. As a result of this additional accrual, the IRS was not paid its administrative claim in full. Upon receipt of its final payment from Debtor, the IRS distribution totalled $295,577.25 on its allowed administrative expense claim.

Testimony received at the hearing on October 4, 1993, indicated that the total payment to the IRS would have satisfied Debtor's principal and interest administrative expense obligations, as well as a portion of the penalties accrued thereon. However, the IRS, despite an attempted designation of payment from Debtor, applied payments received first to penalty, and then to principal and interest. Testimony also indicated that the IRS had initially agreed to the distribution scheme for administrative claimants made in 1988, and that Debtor's principals, Donald Humphrey and Marvin Stulley, in reliance upon the distribution scheme with respect to administrative claims, and a resulting expectation that there would be no personal liability for the relevant tax obligation, contributed significant personal assets, waived personal claims against the bankruptcy estate for wages due and owing, and continued to manage the Debtor's operation in order to maximize values pursuant to the liquidating Chapter 11 plan. Mr. Stulley and Mr. Humphrey testified that they had spent much personal effort in promoting the orderly liquidation of Debtor's operation, and would not have done so had they believed that they would be held personally responsible for taxes, due to the IRS's refusal to designate payments first to principal and interest.

### II. Conclusions of Law

The IRS correctly cites 11 U.S.C. § 1129(a)(9) which requires payment of administrative claims in full on the effective date of the plan. The parties also agree that *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) is either controlling, or critical to determination of Debtor's Motion. The Supreme Court in *Energy Resources* held that the bankruptcy court had the authority to order the IRS to apply a debtor's payments first to the trust fund portion of employment tax liabilities "if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan". *Ener-*

*gy Resources,* 495 U.S. at 549, 110 S.Ct. at 2142.

A number of courts have interpreted *Energy Resources* as allowing for designation of payments to the IRS only with respect to a chapter 11 *rehabilitation. See, United States v. Pepperman,* 976 F.2d 123 (3rd Cir. 1992) (Chapter 7 liquidation); *In re Kare Kemical, Inc.,* 935 F.2d 243 (11th Cir.1991) (Chapter 11 liquidation); and *In re Jehan– Das, Inc.,* 925 F.2d 237 (8th Cir.1991), *cert. den.* ——— U.S. ———, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991) (Chapter 11 liquidation).

The cases cited above, as well as several other courts have asserted that a clear distinction exists between Chapter 11 reorganizations, and any other proceeding with respect to the ability of a debtor to designate IRS payments. This distinction purportedly came from the language in *Energy Resources* cited above, requiring the bankruptcy court to make a determination that "designation is necessary to the success of a *reorganization plan." Energy Resources,* 495 U.S. at 549, 110 S.Ct. at 2142 (emphasis added). It is also true, however, that the cases cited by the IRS do not address special circumstances, as exist here, where principals of a debtor in a liquidating Chapter 11 proceeding took unusual steps to aid in the maximization of benefits to creditors of the debtor-in-possession. Such a scenario was recently addressed in the case of *In re Deer Park, Inc.,* 136 B.R. 815 (9th Cir. BAP 1992), a case that has many similarities to the case presently before the Court.

In *Deer Park,* a liquidating Chapter 11 plan was approved whereby the debtor-in-possession's assets were sold, and funds were generated for payment of priority creditors and secured creditors, specifically including tax claims owed to the IRS. The principal of the debtor continued to act on behalf of the debtor both before and after plan confirmation, and received no compensation in an effort to be relieved of potential personal tax liability. *Deer Park,* 136 B.R. at 816. The Chapter 11 reorganization plan in *Deer Park* provided for full payment to the IRS, which was brought about through the participation of the debtor-in-possession's principal. The Bankruptcy Appellate Panel noted that the

ability of a debtor-in-possession to designate tax payments *could* exist in a Chapter 11 liquidating plan, and that no such limitation was noted in the *Energy Resources* decision. The *Deer Park* court refused to limit the *Energy Resources* ruling to non-liquidating Chapter 11 plans, since such a limitation "fails to recognize that a debtor's continuing participation in a planned, orderly liquidation may in fact be necessary to bring about the maximum recovery for the creditors, as opposed to the amount realized from a forced sale." *Deer Park,* 136 B.R. at 818.

The *Deer Park* court noted that liquidation under Chapter 11, unlike Chapter 7 liquidation, allows for an orderly liquidation of assets over time, in order to maximize values. Congress specifically allowed for liquidation under Chapter 11 "reorganization." Otherwise, all provisions dealing with liquidation would fall within Chapter 7 of the Bankruptcy Code. *Deer Park,* 136 B.R. at 818. Allocation of payments was necessary to the success of the debtor-in-possession's plan in *Deer Park,* and the Court thereby allowed for the requested allocation. *Deer Park,* 136 B.R. at 819. The success of the plan was attributable to the ability of the principal of the debtor-in-possession to participate in the plan. Also, the principal did not receive compensation during the course of the Chapter 11 proceeding, his participation was based on his belief that any potential tax liability would be satisfied by plan payments to the IRS, and creditors also felt that the continued involvement of the corporate principal was necessary to maximize values. *Deer Park,* 136 B.R. at 819.

▇ Here, as in *Deer Park,* the involvement of the principals of the Debtor-in-possession was similarly critical to the success of the plan. It was undisputed at the October 4, 1993 hearing that absent the efforts of the corporate principals, and in the event the case was converted to Chapter 7, there would have been a minimal distribution available to creditors. The IRS had previously agreed to defer 50% of its administrative expense claim, and was subsequently paid an aggregate amount that far exceeded the total principal and interest to which the IRS would have been entitled. As in *Deer Park,* the

principals here agreed to forego compensation, waived priority wage claims, contributed significant personal assets to the Debtor-in-possession, participated in the Debtor-in-possession's activities, both prior to and subsequent to confirmation of the Chapter 11 plan, and effectively allowed for the success of an otherwise questionable distribution.

The actions of Mr. Humphrey and Mr. Stulley, in effect, constituted third-party funding of the Debtor-in-possession's continued activity, and orderly liquidation. Mr. Humphrey contributed personal assets estimated at $350,000.00, and Mr. Stulley contributed personal assets estimated at $150,-000.00 to the Debtor-in-possession. As in *Deer Park*, the principals of the Debtor-in-possession acted under the expectation that they would be relieved of any personal tax liability as the responsible officers of the Debtor-in-possession, and continued their efforts for a planned and orderly liquidation to maximize values for the benefit of the estate's creditors. The Court also notes that the delay resulting in the IRS incurring additional interest and penalties was not caused by the Debtor-in-possession or its principals, but resulted from repeated appeals of its favorable litigation with Ciba–Geigy. Certainly, had these individuals known of the ruling that the Supreme Court would make in *Energy Resources*, they would have tailored their actions accordingly. The Court emphasizes the limited and unique circumstances here that call for the allowance of the requested designation. Most liquidating Chapter 11 proceedings would not fit within the parameters required to allow for such a ruling.

■ It is the ruling of this Court that the actions of the principals of the Debtor-in-possession directly resulted in a successful Chapter 11 plan, under which the IRS received distribution of an amount in excess of the principal and interest to which it otherwise would have been entitled. Allocation of the tax payments, as requested, was necessary to the success of this Plan. As noted by the court in *Energy Resources*, the bankruptcy court has the authority to order the IRS to apply even "involuntary" payments made by a Chapter 11 debtor to trust fund tax liabilities if necessary to the success of the reorganization. This Court believes that the actions of the principals here did in fact result in the success of the reorganization, albeit through a liquidating Chapter 11 plan. In fact, as inferred by the *Energy Resources* Court, whether a payment is rightfully considered "involuntary" is irrelevant. Whether or not the payments are "involuntary", a bankruptcy court has the ability to order the IRS to apply payments made to trust fund liabilities if necessary to the success of a reorganization plan. *Energy Resources*, 495 U.S. at 547–550, 110 S.Ct. at 2141–2142.

■ Under 11 U.S.C. § 105(a), bankruptcy courts may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the Code." Such an ability is consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships. *Energy Resources*, 495 U.S. at 549, 110 S.Ct. at 2142 (citations omitted). Even some of the cases cited by the IRS leave the door open for circumstances where *Energy Resources* could be applied in a Chapter 11 liquidation, or even in a Chapter 7 proceeding. *See, U.S. v. Pepperman*, 976 F.2d 123, 130 (3rd Cir. 1992); and *In re Laminating, Inc.*, 148 B.R. 259, 261 (Bankr.S.D.Tex.1992). Other cases cited by the IRS did not address the issue of special circumstances in a liquidating Chapter 11 plan, as exist here, and merely interpreted *Energy Resources* as drawing a bright line between a non-liquidating Chapter 11 plan, and all other bankruptcy proceedings. *See, Jehan–Das*, 925 F.2d at 238; *Kare Kemical*, 935 F.2d at 244. This Court does not believe that *Energy Resources* drew such a line.

For the reasons set forth above, it is the ruling of this Court that Debtor's Motion for Designation of Payments to the Internal Revenue Service is GRANTED.

IT IS SO ORDERED.