**In re DEER PARK, INC., aka Deer Park Ski Area, Debtor,**

**UNITED STATES INTERNAL REVENUE SERVICE,**
Appellant,

v.

**CREDITORS COMMITTEE; Deer Park, Inc., Appellees.**

No. 92–15802.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 6, 1993.

Decided Dec. 6, 1993.

Gary D. Gray and James A. Bruton, Tax Div., U.S. Dept. of Justice, Washington, DC, for appellant.

Gerald F. Ellersdorfer, San Francisco, CA, for appellees.

Before: FERGUSON, THOMPSON and O'SCANNLAIN, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

This is an appeal from the Bankruptcy Appellate Panel's ("BAP") decision in *United States v. Deer Park, Inc. (In re Deer Park, Inc.),* 136 B.R. 815 (9th Cir. BAP1992). The BAP affirmed an allocation order of the bankruptcy court which required the Internal Revenue Service ("IRS") to credit pay-

ments, made to it in a liquidating plan of reorganization under Chapter 11 of the Bankruptcy Code, first to the withholding tax trust fund portion of the debtor's tax liability. Sufficient payments were made to satisfy this trust fund portion of the IRS's claim, but approximately $20,000 of the claim remained unpaid. The effect was that the debtor's president was relieved of his personal liability for payment of the trust fund taxes, while the IRS had only a possibility that the full amount of its claim would be paid.

The IRS. appeals. We have jurisdiction under 29 U.S.C. § 158(d) (1988), and we affirm.

## FACTS

Deer Park, Inc. ("Deer Park") developed and built a ski resort at Lake Tahoe, California. Gerhard Stoll was Deer Park's president and controlling shareholder from 1980 until September, 1983, when Poma of America, Inc. ("Poma"), a secured creditor of Deer Park, gained control of the corporation and removed Stoll as president. On December 22, 1983, Stoll filed an involuntary Chapter 11 bankruptcy proceeding against Deer Park. Three months later, Poma relinquished control, and Stoll regained his position as president, which he still holds.

The IRS filed a claim in the Chapter 11 proceeding. The claim was for $94,202.31. It included employee withholding taxes which Deer Park had withheld from employee earnings, but which it had failed to pay over to the government. Stoll was personally liable for these taxes because he was the individual responsible to collect, account for and pay them over to the IRS. *See* 26 U.S.C. § 6672(a) (Supp.1991). The taxes are referred to as "trust fund" taxes because 26 U.S.C. § 7501(a) requires that they be held in trust for the federal government. *See United States v. Energy Resources Co.*, 495 U.S. 545, 547, 110 S.Ct. 2139, 2141, 109 L.Ed.2d 580 (1990) (citing *Slodov v. United States*, 436 U.S. 238, 242–43, 98 S.Ct. 1778, 1783, 56 L.Ed.2d 251 (1978)).

The IRS's $94,202.31 tax claim consisted of a priority tax claim of $18,414.33, a secured claim of $72,669.13, and a general unsecured claim of $3,118.85. Deer Park's Chapter 11 liquidating plan of reorganization ("the Plan") provided for the payment in full of all priority and secured claims from $275,000 of proceeds from the sale of all of Deer Park's real property and other assets to Alpine Meadows Ski Corporation ("Alpine Meadows").[1] The Plan also provided that in the event Alpine Meadows were to re-sell the real property within five years of the close of escrow, Alpine Meadows would pay Deer Park 50% of the sales price exceeding $275,-000, and if Alpine Meadows were to use the ski area portion of the property for downhill skiing within ten years of the close of escrow, Alpine Meadows would transfer to Deer Park a 25% equity interest in the entities conducting the operations in the ski area and would pay Deer Park 60% of the net operating cash flow until the payments reached $1.5 million. The Committee's Disclosure Statement cautioned there was no assurance or present indication that either event would occur.

Stoll negotiated the sale of Deer Park's real property and other assets to Alpine Meadows. He worked with the Creditors Committee ("the Committee") and on Deer Park's behalf without compensation, and continues to do so. He did so pursuant to an understanding with the Committee that his personal liability for the unpaid trust fund taxes would be discharged by payments to the IRS under the plan of reorganization.

Stoll and the Committee asserted in the bankruptcy court, as the Committee does on appeal, that he is the only person fully familiar with all aspects of Deer Park and its business. He has maintained contact with Alpine Meadows, the United States Forest Service, and local planning agencies; has worked to promote the reopening of Deer Park; and the Committee contends his services continue to be necessary because they provide the creditors with the best chance that the contingent payments specified in the Plan will be realized.

---

1. The IRS and the Committee filed a stipulation in which the parties agreed that Deer Park could sell its assets free of liens and that the liens would attach to the proceeds of the sale, in the same amount and in the same priority.

On October 16, 1985 the bankruptcy court approved the Committee's Plan of Reorganization. It divided the claims into ten classes. Priority claims were placed in Class 3, secured claims in Class 4. The Plan anticipated payment in full of all claims through Class 5 by the end of the three-year period Alpine Meadows was required to make payments under the Plan. This would have happened if the amounts of all claims had been accurately set forth in the Plan. Unfortunately, they were not.

The Plan erroneously listed the total Class 3 tax claims of the IRS as $72,591.02 instead of the correct amount of $94,202.31.[2] This error came about because the Committee totalled the figures from the second page of the IRS Proof of Claim, but failed to add in the figures from the first page. The Committee erroneously included the $72,591.02 figure as the amount of the IRS claim when it submitted the Plan to the bankruptcy court for approval.

The bankruptcy court carried this error over into its December 15, 1986 order approving payment of priority tax claims in installments over the three-year payout from the sale to Alpine Meadows. One month later, the IRS learned that the court's order incorrectly listed its claim in the amount of $72,591.02 instead of $94,202.31. The IRS said nothing. Instead, it accepted installment payments under the Plan, and when the final payment was made it acknowledged it had received payment "in full satisfaction of the [IRS's] priority claim herein."

On June 14, 1990, Stoll learned of the mistake. An IRS agent informed him that the amount the IRS had received under the Plan was not sufficient to pay its entire tax claim in full, and as a result Stoll would have to pay the shortfall, which the IRS attributed to Deer Park's trust fund liability. In response, the Committee filed a motion with the bankruptcy court in the pending Chapter 11 proceeding to require the IRS to apply the payments it had received under the Plan first to Deer Park's trust fund tax liability so that Stoll's personal liability would be discharged.

The bankruptcy court granted the motion over the IRS's objection. The court found Stoll's services were necessary to the success of the Plan and ordered the IRS to allocate the payments it had received first to the trust fund tax portion of its claim. The result was that the IRS could not collect anything from Stoll, but had to await the possibility that it would be paid the balance of its claim out of future contingent payments specified in the Plan. The BAP affirmed the bankruptcy court, *Deer Park*, 136 B.R. 815, and this appeal followed.

## ANALYSIS

In *Energy Resources*, the Court held that "a bankruptcy court has the authority to order the IRS to apply the payments to trust fund liabilities if the bankruptcy court determines that this designation is necessary to the success of a reorganization plan." *Energy Resources*, 495 U.S. at 548–49, 110 S.Ct. at 2141. The government argues that *Energy Resources* does not apply to a Chapter 11 plan which provides for liquidation. We disagree.

As explained by the BAP in its opinion, a debtor's continuing participation in a planned liquidation may be necessary to bring about maximum recovery for creditors. *Deer Park*, 136 B.R. at 818. Chapter 11 of the Bankruptcy Code provides that liquidation may be a form of reorganization, as opposed to a straight liquidation under Chapter 7. 11 U.S.C. § 1129(a)(11) (1988).

The rationale for the Court's holding in *Energy Resources*, that a bankruptcy court may order the IRS to allocate tax payments to offset trust fund obligations where necessary for a successful reorganization, was explained in *In re Gregory Engine & Machine Svcs., Inc.*, 135 B.R. 807 (Bankr.E.D.Tex. 1992). There the court stated:

> Although not stated by the Supreme Court, this Court is of the opinion that allowing [such an allocation] is necessary to the effective reorganization of a Chapter 11 debtor in that such a designation corre-

---

2. Although the IRS claim included both secured and priority tax claims, the aggregate amount of the claim in the erroneous sum of $72,591.02 was listed as a class 3 priority tax claim.

spondingly reduces the responsible person liability of debtor's officers and managers. Given this result, these officers and managers have every incentive to assist in debtor's reorganization.

*In re Gregory*, 135 B.R. at 809.

We agree with this analysis in *In re Gregory*. It does not matter that the Chapter 11 reorganization plan is a liquidating plan, so long as the allocation of trust fund tax payments is necessary to the success of the reorganization.

■ The bankruptcy court found that Stoll's assistance was essential to the Plan. It is true that all of Deer Park's assets had been sold and all of the proceeds distributed to creditors. Nevertheless, the possibility of reopening Deer Park for downhill skiing existed and that was a fundamental part of the Plan approved by the creditors. If that occurred, it would dramatically increase the recovery for creditors. Stoll, because of his experience with Deer Park and his contacts with Alpine Meadows, the Forest Service, and local planning agencies, and his commitment to the fulfillment of the contingencies of the Plan, was the person most likely to make this part of the Plan succeed. We conclude that the bankruptcy court did not clearly err in finding that Stoll's assistance was essential to the success of the Plan.

■ Notwithstanding the foregoing, the government argues that the bankruptcy court's allocation order is invalid in any event because it violates the "six year rule" of section 1129 of the Bankruptcy Code, which provides:

(a) The court shall confirm a plan only if all of the following requirements are met:
. . . .

(9) Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that—. . . .

(C) with respect to a claim of a kind specified in section 507(a)(7) of this title, the holder of such claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

11 U.S.C. § 1129 (1988).

The Court rejected the government's argument in *Energy Resources*. There, the Court stated: "these restrictions on a bankruptcy court's authority do not preclude the court from issuing orders of the type at issue here, for those restrictions do not address the bankruptcy court's ability to designate whether tax payments are to be applied to trust fund or non-trust-fund tax liabilities." *Energy Resources*, 495 U.S. at 550, 110 S.Ct. at 2142. Consistent with *Energy Resources*, we also reject the government's argument that the bankruptcy court's order violates the six year rule of section 1129.

■ The government also argues that the bankruptcy court's order violates the absolute priority rule of sections 1129(a)(7) and 1129(b)(2) of the Bankruptcy Code, because it requires the IRS to reallocate a part of the proceeds received away from the secured portion of its claim to the unsecured priority portion.[3] This argument lacks merit. Sec-

---

**3.** Sections 1129(a)(7) and 1129(b)(2) of the Bankruptcy Code provide:

(a) The court shall confirm a plan only if all of the following requirements are met:

(7) With respect to each impaired class of claims or interests—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date; or

(B) if section 111(b)(2) of this title applies to the claims of such class, each holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

(b)(1) . . . . if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims

tions 1129(a)(7) and 1129(b)(2) are not implicated by the allocation order. The IRS received payment from the proceeds of the sale of Deer Park's assets just as the court's December 15, 1986 order said it would. The allocation order did not change this. No other creditor received money that should have been paid to the IRS. The absolute priority rule was not violated.

■ The government also challenges the allocation order on the ground it violates section 506(c) of the Bankruptcy Code. Again, the government asserts that the allocation order requires the IRS to transfer money away from the secured portion of its claim and credit it to the unsecured portion. It contends this violates the requirement of section 506(c) that a trustee may only recover from secured property "the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (1984). We also reject this argument. The allocation order did not require the trustee to pay any of the proceeds of the sale to any unsecured creditor at the expense of a secured creditor. The IRS got the money, not someone else. Section 506(c) is inapplicable.

■ The government next contends that the allocation order violates Section 6672 of the Internal Revenue Code, which provides that payroll and social security taxes not withheld from employees may be recovered directly from the officers and employees responsible for the collection of these taxes if they are not paid to the government. 26

U.S.C. § 6672 (Supp.1991). The government relies on *Kelly v. Lethert*, 362 F.2d 629 (8th Cir.1966). There, the Eighth Circuit stated that "the very purpose of Section 6672 ... is precisely to afford the Government additional assets for the collection of the unpaid withholdings in the event of an insolvent corporation's failure to pay the tax when due...." *Id.* at 634–35.

The Court rejected this argument in *Energy Resources*. The Court held that ordering the IRS to apply tax payments to trust fund liabilities did not violate section 6672 because the "Bankruptcy Courts' orders do not prevent the Government from collecting trust fund revenue; to the contrary, the orders require the Government to collect trust fund payments before collecting non-trust-fund payments." *Energy Resources*, 495 U.S. at 550, 110 S.Ct. at 2142. The same reasoning applies here. The bankruptcy court's order does not conflict with section 6672 of the Internal Revenue Code.

■ Finally, the government argues that because the reopening of Deer Park is speculative there is no reasonable assurance that it will ever be paid the full amount of its tax claim. It argues this circumstance distinguishes this case from *Energy Resources*, and precludes the bankruptcy court from ordering allocation of the tax payments first to pay the trust fund tax liability. The Tenth Circuit appears to agree with this analysis. *See Small Business Administration v. Preferred Door Co.*, 990 F.2d 547, 550 (1993) (affirming bankruptcy court's dismissal of Chapter 11 proceeding because the plan did

or interests that is impaired under, and has not accepted, the plan.

(2) .... the condition that a plan be fair and equitable with respect to a class includes the following requirements:

(A) With respect to a class of secured claims, the plan provides—

(i)(I) that the holders of such claims retain the liens securing such claims ... to the extent of the allowed amount of such claims; and

(II) that each holder of a claim of such class receive on account of such claim totalling at least the allowed amount of such claim, of a value ... of at least the value of such holder's interest in the estate's interest in such property;

(B) With respect to a class of unsecured claims—

(i) the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

(ii) the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property. 11 U.S.C. §§ 1129(a)(7), 1129(b)(2) (1988).

Section 503(b) of the Bankruptcy Code provides that administrative expenses, including any taxes incurred by the estate or any penalties relating to such taxes, are entitled to first priority.

not provide for full payment of postpetition taxes, interest, and penalties; distinguishing *Energy Resources* because there the "designation [did] not compromise the government's right to be assured of full payment of its tax claim").

We do not read *Energy Resources* to compel the result asserted by the IRS and apparently accepted by the Tenth Circuit. In *Energy Resources* the Court recognized the possibility that the government might not receive payment in full, but did not view this as critical. The Court stated:

> The Government is correct that, if it can apply a debtor corporation's tax payments to non-trust-fund liability before trust fund liability, it stands a better chance of debt discharge because the debt that is not guaranteed will be paid off before the guaranteed debt. While this result might be desirable from the Government's standpoint, it is an added protection not specified in the Code itself....

*Energy Resources*, 495 U.S. at 550, 110 S.Ct. at 2142. Similarly, in its discussion of section 6672, the Court stated:

> The Government ... contends that the Bankruptcy Court's orders contravene § 6672 because, if the IRS cannot designate a debtor corporation's tax payments as non-trust-fund, the debtor might be able to pay only the guaranteed debt, leaving the Government at risk for non-trust-fund taxes. This may be the case, but § 6672, by its terms, does not require us to hold that the orders at issue here ... were ... improvident.

*Energy Resources*, 495 U.S. at 551, 110 S.Ct. at 2143. The fact that the government is not assured of full payment of its tax claim is not controlling.

## CONCLUSION

We affirm the decisions of the bankruptcy court and the Bankruptcy Appellate Panel. The bankruptcy court did not err in ordering the IRS to apply the tax payments first to the trust fund portion of Deer Park's tax liability.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting:

I submit that the tax allocations ordered by the bankruptcy court in this case are not permitted by *United States v. Energy Resources Co.*, 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) and the bankruptcy court therefore was without jurisdiction.

The Creditors Committee's First Amended Plan of Reorganization recognized the fact that the ski lifts operated by the debtor corporation had been removed and it was no longer possible for the debtor to operate or reorganize.

The only course of action available was a complete liquidation of the debtor and sale of all assets to an adjoining ski resort (Alpine Meadows Ski Corporation). The sales agreement with Alpine, dated 1984, provided that if Alpine resold the Deer Park assets within five years, Alpine would pay Deer Park 50% of the sales price exceeding $275,000 (Alpine's purchase price for Deer Park). It also provided that, if within 10 years, a part of the Deer Park property was used for downhill skiing, Alpine would pay additional compensation based on net receipts, except that if any part was used for downhill skiing from the existing Alpine Meadows area, then additional compensation would not be paid. This exception negated any possibility of additional compensation because the only way the skiers could reach the area was by Alpine's ski lifts.

The sole evidence introduced requesting the bankruptcy court to reallocate funds previously received from the sale of the Deer Park assets was a self serving declaration of Mr. Stoll, the president of the debtor corporation, in which he states, "It is necessary for the success of the reorganization plan that it be amended to include the direction for application of tax payments first to trust fund portions of tax due in order to carry out the implicit understanding I have had with the Creditors Committee regarding my continued service without compensation." The Creditors Committee in its statement in support of the reallocation of the funds already received, admitted that its purpose was to do all that it could so that Mr. Stoll would not have any tax debt as an officer of the debtor corporation.

The bankruptcy court, in issuing the reallocation order, stated that its purpose was to see that Mr. Stoll's personal liability regarding the trust fund was discharged. What the bankruptcy judge intended to do and did was to discharge a responsible person's liability under § 6672 of the Internal Revenue Code when the bankruptcy code specifically provides that such liability is not dischargeable. *In Re Ribs–R–Us,* 828 F.2d 199, 201 (3rd Cir.1987).

In *Energy Resources* the Supreme Court emphasized repeatedly that an allocation order must be *necessary* to the reorganization plan's success if it is to be ordered. There is absolutely no evidence that relieving Mr. Stoll of his personal liability to pay the trust funds would cause Alpine Meadows to reopen Deer Park. To believe otherwise is to believe (without any evidence or knowledge) that Alpine Meadows would follow the advice given by the president of a company that was forced to close its skiing operations when this president was the officer responsible for the misapplication of trust funds. Such analysis without any evidence, defies ordinary business sense. The fact is that, in this case, there was no debtor to be reorganized. All of its assets were sold and there was no business to continue. This was a liquidation and not a reorganization, and *Energy Resources* is not applicable.

The purpose of a business reorganization is to "restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." H.R.Rep. No. 595, 95th Cong., 2nd Sess. 220, reprinted in 1978 U.S.C.C.A.N. 5787, 5963, 6179. *See also In Re De Laurentiis Entertainment Grp. Inc.,* 963 F.2d 1269, 1274 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 330, 121 L.Ed.2d 249 (1992) (purpose of Chapter 11 is to discharge debtors from their debts so that they can continue in business and pay creditors from available funds); *In Re Gonic Realty Trust,* 909 F.2d 624, 627 (1st Cir.1990) (purpose of Bankruptcy Code is to encourage financial restructuring, pay creditors, preserve jobs and protect shareholders' interests).

The bankruptcy court's reallocation serves neither Deer Park's estate, employees, creditors or stockholders. Instead, the reallocation merely benefits Mr. Stoll. He is relieved of all personal liability for payment of the taxes. Chapter 11 is not intended to benefit such interested third parties. *In Re Humble Place Joint Venture,* 936 F.2d 814, 818 (5th Cir.1991) (bankruptcy court's finding that purpose of Chapter 11 is to "cleanse the partners of their liability" was impermissible; fate of partners is irrelevant).

Therefore, I DISSENT.