**In re Christopher L. MOORE and Ramie A. Moore, Debtors.**

Bankruptcy No. 695–61480–aer13.

United States Bankruptcy Court, D. Oregon.

Sept. 3, 1996.

James Dietz, Medford, OR, for Debtors.

Jeffrey Wong, District Counsel, Internal Revenue Service, Portland, OR, for Creditor, Internal Revenue Service.

## MEMORANDUM OPINION

ALBERT E. RADCLIFFE, Bankruptcy Judge.

This matter comes before the court upon the motion of the United States of America, by and through its agency, the Internal Revenue Service (IRS) for relief from stay to apply a tax refund to pre-petition tax liabilities.

## BACKGROUND

The debtors filed their petition for relief pursuant to Chapter 13 of the Bankruptcy Code, herein, on April 24, 1995. On May 4, 1995, they filed their Chapter 13 plan dated May 3, 1995. The plan provides in pertinent part that the debtors shall pay the sum of $200 each month to the Chapter 13 trustee. All debts entitled to priority pursuant to 11 U.S.C. § 507 are to be paid in full, general unsecured claims shall receive no payment. The debtors' Chapter 13 plan was confirmed

by an order entered, herein, on November 8, 1995.

On March 27, 1996, the IRS filed its Motion for Relief from Stay to Apply Over Payment to Pre-petition Tax Liabilities. The motion indicates that the IRS has a pre-petition claim in the aggregate sum of $13,-340.38. The IRS contends that $11,079.49 of this amount is entitled to priority. The IRS concedes that the remaining sum of $2,260.89 is a general unsecured claim. The IRS concedes that a debt is due to the debtors in the form of a tax refund for the year ended December 31, 1994 in the sum of $5,582. The IRS seeks relief from stay to set off the tax refund against the debt owed by the debtors to the IRS. The IRS proposes to apply the tax refund first to payment in full of its general unsecured claim in the amount of $2,260.89.

On April 4, 1996 the debtors filed their response to the IRS Motion for Relief, contending that the refund should be paid over to the Chapter 13 trustee for distribution in accordance with the confirmed plan in this case and that the IRS should only be paid in accordance with the plan on its priority claim.

On May 8, 1996 a hearing was held on the Motion for Relief. At the hearing, the trustee represented that the confirmed plan would no longer be feasible if the proposed allocation by the IRS were to be allowed. In other words, a full application of the refund to the priority claim of the IRS would be needed in order for the plan, as confirmed, to be properly funded. The trustee also represented that the debtors were not current in their plan payments at that time and that there was a trustee's Motion to Dismiss pending. The IRS maintained that it would not be adequately protected if it were forced to turn over the refund to the trustee in light of the debtors' right to dismiss the pending Chapter 13 proceeding.

This court's findings and conclusions resulting from the May 8, 1996 hearing are set forth in an order entered, herein, on July 11, 1996. In pertinent part, this court found and concluded that the IRS's right to set off under § 553 of the Bankruptcy Code survived confirmation of the debtors' Chapter 13

plan in this case, that partial relief from the stay would be granted to enable the IRS to retain the 1994 tax refund, but that any final determination regarding the allocation of the refund would be deferred. This court further noted that any further action in this case would await the outcome of the trustee's motion to dismiss this case. Finally, if the debtors were to bring their Chapter 13 plan payments current and the trustee's motion to dismiss were to be withdrawn, a further hearing would be scheduled to determine the allocation issue.

The trustee has filed a withdrawal of his motion to dismiss this case. The parties have indicated to this court that they are satisfied with the record presently before this court concerning the allocation issue, that they do not wish to be heard further and that the matter is now ripe for decision. None of the factual matters recited herein are disputed.

## ISSUE

The sole issue to be decided is the matter concerning the allocation of the debtors' 1994 tax refund. May the IRS allocate the refund as it sees fit to maximize the recovery to the United States or may the court, exercising its equitable authority, designate how the refund is to be applied where such designation is necessary for the debtors' Chapter 13 plan?

## DISCUSSION

All statutory references are to the Bankruptcy Code, Title 11, United States Code, unless otherwise indicated.

**General Rule:**

26 U.S.C. § 6402(a) provides:

(a) GENERAL RULE. In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, *against any liability* in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c) and (d), refund any

balance to such person. (Emphasis added).

Section 553(a) provides in pertinent part:

[T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title, against a claim of such creditor against the debtor that arose before the commencement of the case, . . .

"Section 553 does not by itself create a right to set off. Instead, it merely allows setoffs in bankruptcy to the extent they are allowed under non-bankruptcy law." *In re Lawson,* 187 B.R. 6, 7 (Bankr.D.Id.1995). It is clear that under non-bankruptcy law, the IRS may credit the 1994 refund to any tax liability owed by the debtors. In short, the allocation proposed by the IRS would be allowed.

The ruling of the Ninth Circuit in *In re Technical Knockout Graphics, Inc.,* 833 F.2d 797 (9th Cir.1987) describes the general rule on the allocation issue in bankruptcy. There, a Chapter 11 debtor sought to allocate payments it made to the IRS to that portion of the debt considered to be "trust fund" taxes resulting from an employee withholding tax liability to protect the debtor's principals from personal liability. The IRS maintained it could allocate the payments to the non-trust fund taxes in order to maximize the government's recovery. The court noted that when a tax payer makes voluntary payments to the IRS the taxpayer has the right to designate to which liability the payment will be applied. It also observed that when the payments are involuntary, the IRS may apply the payments to whatever liability it chooses. The court concluded that payments made by a Chapter 11 debtor-in-possession are involuntary; thus, the IRS could control the allocation of payments.

The court reached a similar result in *In re Junes,* 76 B.R. 795 (Bankr.D.Or.1987), a Chapter 13 case. There, the IRS was an under secured creditor holding both priority and non-priority tax claims. The IRS wished to require the debtor to treat the non-priority tax debt as secured to maximize its recovery. The debtor proposed to allocate the value of the collateral first, to the priority tax claims. Judge Hess concluded that "[P]ayments pursuant to a Chapter 13 plan which are required by the provisions of Chapter 13 are involuntary payments." 76 B.R. at 796. Accordingly, he concluded that the IRS could require that the value of the collateral be allocated first, to the non-priority claim.

The court dealt with the issue of a tax refund owing to the debtors as a result of a pre-petition overpayment in *In re Lawson, supra.* In holding that the IRS could set off the refund first, against its non-priority claim, the court held:

The priorities given by Section 507 are expressions of Congressional policy that certain claims against a debtor should be given priority in payment above others. It would completely defeat this statutory scheme if a debtor were allowed to set off its claims against the creditor, first against the creditors' priority claims and secondly against the creditors' non-priority claims. 187 B.R. at 8 & 9.

The court did note, however, that "The trustee does not contend the debtors need the tax refund in order to enable them to finance their Chapter 13 plan." 187 B.R. at 8. In accord, *see In re Carter,* 125 B.R. 832 (Bankr.D.Kan.1991).

**Exception:**

The courts have observed that the application of § 553 set off is permissive rather than mandatory. *See In re Medina,* 177 B.R. 335 (Bankr.D.Or.1994); *In re Lawson,* 187 B.R. 6 (Bankr.D.Id.1995); and *In re Cascade Roads, Inc.,* 34 F.3d 756 (9th Cir.1994).

The Supreme Court in *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990) created an exception to the general rule described above. The situation was similar to that presented to the Ninth Circuit in *Technical Knockout Graphics, Inc.,* in that trustees in Chapter 11 proceedings sought to allocate payments to the IRS to the trust fund portion of taxes owed. The Supreme Court noted that § 105(a) provides in part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Accordingly, the Supreme Court concluded that the bankruptcy court could order the IRS to

apply payments first, to offset trust fund obligations if the bankruptcy court concludes that this action would be necessary for the success of the reorganization in Chapter 11. *See also In re Deer Park, Inc.,* 10 F.3d 1478 (9th Cir.1993).

Given the similarity between § 1141 and § 1327 [1], it appears clear to this court that the holding of *Energy Resources* should be applied in Chapter 13 cases to the same extent it is applicable in Chapter 11 cases. Here, unlike the situation in *Lawson,* the parties agree that the tax refund is necessary in order to enable the debtors to perform their confirmed Chapter 13 plan. The plan will no longer be feasible if the allocation proposed by the IRS is allowed. Accordingly, following the holding of the Supreme Court in *Energy Resources,* this court, exercising the powers conferred under § 105(a), may order the IRS to allocate the 1994 income tax refund first, to that portion of its claim entitled to priority, prior to any allocation to that portion of the claim which is a general unsecured claim. An order consistent herewith shall be entered.

1. § 1141. Effect of confirmation (provides in part):

(a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order

confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

§ 1327. Effect of confirmation

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

(b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

(c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.