**In re T.M. PRODUCTS CO., Debtor.**

**Bankruptcy No. 85–01072–BKC–AJC.**

United States Bankruptcy Court, S.D. Florida.

March 23, 1990.

Brian K. Gart, Greenberg, Traurig, Askew, Hoffman, Lipoff, Rosen & Quentel, P.A., Miami, Fla., for debtor.

Scott E. Itkin, Sp. Asst. U.S. Atty., S.D. Fla., Miami, Fla.

Theresa Mitchell, U.S. Atty., Tax Div., Dept. of Justice, Miami, Fla.

M.B. Oliver, State of Fla., Dept. of Revenue, Fort Lauderdale, Fla.

John H. Genovese, Strook & Strook & Lavan, P.A., Miami, Fla., for Thomas J. Metzger, principle of the debtor.

## ORDER ON JOINT OBJECTION TO THE CLAIMS OF THE INTERNAL REVENUE SERVICE

A. JAY CRISTOL, Bankruptcy Judge.

This cause came before the Court on February 21, 1990, at 1:30 p.m., on the Joint Objection to the Claims of the Internal Revenue Service ("IRS") (the "Objection") filed by the Debtor, T.M. Products Co. ("TM") and its president Thomas Metzger ("Metzger").

This Order is intended to constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

These Chapter 11 proceedings have been pending since 1985. TM is a manufacturer of aluminum doors and windows, whose plant is in an economically blighted area. It employs approximately 160 people, most of whom are minorities.

At the hearing the IRS made an *ore tenus* motion to dismiss for the lack of standing of Metzger. Because TM joined in the motion, and because Metzger was a principal of TM and is a major creditor of the estate, the Court denied the Motion.

For the purposes of this hearing, the Court takes judicial notice of the orders entered with respect to status conferences (the "Orders"), as well as all other orders, pleadings and reports filed in the case. The Orders, almost since the inception of the case, have reflected the Court's efforts to balance the interests of TM and its creditors in reorganization and the rights of administrative claimants, in particular the IRS, to the payment of obligations incurred in the reorganization process. Indeed, the IRS took the position, as early as Fall, 1985, that the proceedings should be dismissed for the failure of TM to pay the trust fund portion of taxes to the IRS. *See* United States of America's Motion to Dismiss.

Another interest that the Court was required to protect was that of Mellon Bank ("Mellon"). As reflected in numerous orders governing the use of cash collateral,

the Court authorized TM's use of monies derived in the operation of its business and required percentage payments to Mellon. *See*, e.g. Agreed Order on Debtor's Emergency Motion for Further Modification on Adequate Protection and Mellon Bank's Motion to Compel Compliance, entered August 18, 1986.

There is little question in the Court's mind that the most persistent and significant problem during the pendency of this case was TM's difficulty in timely paying its tax obligations, particularly those comprising withholding tax trust fund payments. Numerous pleadings filed by the IRS reflect its significant efforts to see that trust fund taxes were in fact paid by TM when due and many of the Orders reflect the Court's efforts to see that such taxes were paid. *See* e.g. Order on Status Conference, entered August 15, 1988, (in which the Court directed that all delinquent and current withholding taxes be paid *prior* to any further interest payments to Mellon Bank).

About June of 1989, it became apparent that TM would not survive and that a Chapter 11 plan if filed, other than a consensual liquidating plan, would not be confirmed. The Court was advised that the principal impediment to a successful plan was the administrative tax liability, in excess of $1.5 million. Under Section 1129(a)(9)(A) of the Code, such claims must be paid in full in cash on the effective date of the plan, unless otherwise agreed. Thus, the taxing agencies held the trump card; no plan could be approved without their consent, and no investor or purchaser appeared interested in satisfying such claims.

However, in June of 1989, TM and Metzger filed a Joint Motion to Sell Substantially All Assets of Debtor Free and Clear of Liens. The Joint Motion reflected an attempt by the movants to sell the company as a going concern to maximize the estate's recovery. The Court entered its Order Granting Joint Motion to Sell Substantially All Assets of Debtor Free and Clear of Liens, on July 7, 1989. The Court now recognizes that the serious disruption that would have occurred in the event of dismissal has not occurred because of the sale; but, that has been achieved at great cost. We have avoided the Scylla of liquidation but not the Charybdis of significant unpaid administrative liability.

The Objection arises from a disagreement over the amount of such tax liability. Specifically, it arises from a dispute between TM and Metzger and the IRS as to the proper application of payments made during these proceedings.

TM and Metzger contend that all sums paid to the IRS during the course of these proceedings were on account of trust funds taxes. The IRS has filed an amended proof of claim (the "Claim"), dated January 30, 1990, apparently recognizing, in part, such an application of payments.

In discussions with Metzger however, the IRS has apparently taken the position that the true liability for trust fund taxes of the company, and hence Metzger's personal liability as a "responsible officer" within the meaning of Section 6672 of the Internal Revenue Code, 26 U.S.C. § 6672 (1982), is significantly greater than reflected in the Claim or that which TM and Metzger assert is owed. It is unclear whether the IRS even stands by its Claim.

The issue presented to the Court is not novel. As the Court sees it, the issue is two pronged. First, under what circumstances may a debtor designate where payments made in a Chapter 11 are to be applied. Second, when may this designation occur.

■ The authority is divergent. Certain appellate decisions have held that payments under a Chapter 11 Plan of Reorganization are involuntary and may not be designated. *In re Ribs–R–Us*, 828 F.2d 199 (3rd Cir.1987); *In re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987); *In re Ducharmes & Co.*, 852 F.2d 194 (6th Cir.1988).

However, the Eleventh Circuit in *In re A & B Heating Corp.*, 823 F.2d 462 (11th Cir.1987), vacated and remanded for consideration of mootness, 486 U.S. 1002, 108 S.Ct. 1724, 100 L.Ed.2d 189 (1988), holds to

the contrary,[1] as does the *First Circuit* in *In re Energy Resources Co., Inc.*, 871 F.2d 223, 230 (1st Cir.1989).

In both *A & B Heating* and *Energy Resources* debtors in Chapter 11 plans were permitted to designate the application of payments made to the IRS. As stated in both, the issue turns on whether the payments to the IRS, under its rules, are deemed "voluntary" where the taxpayer pays its liability or "involuntary" where the payment is a result of collection efforts. If voluntary, the debtor may designate and if involuntary, the IRS may apply the payments where it chooses.

In *In re Energy Resources Co.*, 871 F.2d 223 (1st Cir.1989) the Court acknowledged that payments in a Chapter 11 cannot be easily described as either voluntary or involuntary: "In our view, the labeling question is a difficult one because a Chapter 11 proceeding has *some* characteristics that make one consider a related tax payment 'involuntary'; but it also has *other* characteristics that make a 'voluntary' label seem more natural." *Id.* at 228 (emphasis in original).

The characteristics which make a Chapter 11 proceeding seem voluntary are:

(1) the debtor chooses voluntarily to enter chapter proceeding;

(2) chapter 11 proceedings are intended to offer protection to the debtor from its creditors;

(3) Chapter 11 gives the debtor options as to how the IRS will be paid;

(4) third parties may have provided funds used for payment;

(5) if the debtor does not file a plan restructuring the IRS obligations, the case may be dismissed; and

(6) historically, the debtor in a bankruptcy proceeding, can choose which of several claims held by a creditor will be satisfied by a payment.

*In re Energy Resources*, 871 F.2d at 229.

The factors which favor a conclusion that payments in a Chapter 11 are involuntary are based upon a simple premise: A Chapter 11 requires enforcement action by the IRS, court supervision and court orders requiring the debtor to achieve confirmation of a plan and to meet the obligations contained therein including the payment of priority tax claims. *Id.*

Even if *A & B Heating* is not binding authority, the Court finds its reasoning and that of *Energy Resources* persuasive. The Court concludes that TM was entitled to designate.

Because this case did not involve a Chapter 11 plan which designated payment, the Court must make a preliminary factual determination as to whether there was, in fact, some other designation. Jerry Davis, TM's comptroller, testified that it always was TM's intention to comply with the Orders which, as mentioned, required the payment of the trust funds taxes first, despite the fact that the dozens of checks involved do not bear a description. These problems notwithstanding, even Madeline Oliver, the IRS representative, testified that she was aware, on several occasions, that Davis indicated TM's intention that specific checks were for trust fund taxes.

Davis' explanation was that, because of orders entered at Mellon's insistence requiring Mellon to be paid, there were insufficient funds on hand to pay the IRS. The same is true of taxes owing to the State of Florida. The parties, including Mellon, were apparently aware of this fact.

The Court heard testimony that during the proceedings, the Metzger family infused approximately $1.2 million so that TM could meet its obligations and at least some portion of those funds were used to pay the IRS. Further, during the proceedings, the IRS was paid approximately $2.5 million.

The Court finds that many of the factors enumerated in *Energy Resources* are present. Here, TM tried for a number of years to reorganize, albeit unsuccessfully. Metzger personally did a yeoman's job in

---

**1.** The precedental value of *A & B Heating* is unclear since the case ultimately was dismissed as moot.

tirelessly using his efforts and funds in attempts to reorganize. Ultimately, no plan was confirmed, but TM was sold as a going concern for fair value and the jobs of over 120 employees were preserved. Although this was not a reorganization in the classical sense, it has achieved at least as much as a liquidating plan would. The Court was advised in Court that a plan would not be successful because, as mentioned, *any* plan would require the payment of all administrative claims, including taxes, upon confirmation. Without the agreement of IRS to a plan there could be no confirmation.

Further, and perhaps more compelling, unlike *Energy Resources*, this case involves persistent Court supervision to assure that taxes and particularly trust fund portions were paid when due. If the Court were to conclude that these payments were involuntary because the IRS was paid because of enforcement action, and therefore through a "legal proceeding," *Amos v. Commissioner*, 47 T.C. 65 (1966), it would reach a truly anomalous result. Here the IRS' efforts and the Court Orders were specifically *directed* at the payment of trust fund taxes. To now recast those payments as having been made on account of nontrust fund taxes is inappropriate. Further, it would undermine the policy of encouraging guarantors and principals of debtors to infuse capital necessary to keep those debtors operating. Without the added assurance that in helping the debtor, they are limiting their exposure the principals might well just wait until responsible officer liability is assessed. Unfortunately, that may be too late for the debtor.

The Court additionally concludes, as to the second issue presented, that the designation of tax payments occurred at the time that they were paid and, again, upon filing of the Joint Motion. Either, standing alone, is sufficient.

Accordingly, it is

ORDERED and ADJUDGED that the Joint Motion is granted.

FURTHER ADJUDGED that for the purpose of determining the tax liability of TM and Metzger, all payments received by the IRS during these proceedings shall be applied first to trust fund taxes.

DONE and ORDERED.