**In re M.C. TOOLING CONSULTANTS, INC., Debtor.**

**Bankruptcy No. 91–3788.**

United States Bankruptcy Court, D. South Carolina.

Aug. 11, 1993.

Robert H. Cooper, Drose, Davidson & Bennett, Greenville, SC, for debtor.

Steven Webster, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, for I.R.S.

## ORDER

WILLIAM THURMOND BISHOP, Bankruptcy Judge.

THIS MATTER came before the Court on July 14, 1993, upon the Debtor's Motion to Modify its Chapter 11 Plan of Reorganization and the Debtor's request for an extension of time to file its "Report of Substantial Consummation." The debtor requested permission to modify its Plan to state that the Internal Revenue Service, a Creditor, would attribute all past, present and future Chapter 11 Plan payments it receives first to the "Trust Fund" portion of its debt and then to the non-Trust portion after the Trust portion had been paid in full. Additionally, the debtor requested the extension of time for filing the "Report of Substantial Consummation" until the modification issue had been resolved.

The Internal Revenue Service filed its objection to the Motion to Modify and requested that the Court deny the relief requested by the debtor.

The issue before the court was whether or not the Court should Order the Internal Revenue Service to apply Chapter 11 payments it receives from this debtor first to the Trust Fund portion of its debt and then to the non-Trust portion after the Trust portion has been paid in full.

"Trust Fund" taxes are generally known as those taxes an employer is required under the Internal Revenue Code to withhold from its employees paychecks. Examples of such taxes are income taxes and Social Security taxes. The debtor in the present case, owed the Internal Revenue Service $78,090.97 of which approximately $40,000.00 were Trust Fund taxes.

The debtor's President testified that a former bookkeeper had written the checks to pay this debt when due, which the President had signed; however, the bookkeeper never actually forwarded the checks to the Internal Revenue Service. Thus, this debt was a major factor in the debtor's decision to file for reorganization.

The debtor characterized the issue as twofold:

(1) Are payments made by a debtor under a voluntary bankruptcy reorganization voluntarily made by such debtor?

(2) Is it necessary to this debtor's reorganization for the Court to Order the Internal Revenue Service to apply payments it receives under this debtor's Plan first to the Trust portion of the debt and then to the non-Trust portion?

The debtor argued that if the Court ruled that these payments were *voluntary*, the Court need look no further, because the debtor would be entitled to its relief. The debtor further argued that should the Court rule that these payments are *not voluntary*, the burden would then be on the debtor to prove that the allocation of payments it seeks is "necessary to an effective reorganization."

■ It is not disputed that the Bankruptcy Court now has the *authority* to Order the IRS to apply payments it receives under a debtor's Plan of Reorganization first to the Trust liability and then to the non-Trust liability *if it is necessary to an effective reorganization.* See *United States v. Energy Resources Co., Inc.,* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); 22 CBC2d 1093 (1990). *See also* 11 U.S.C. Section 1123(b)(5); 11 U.S.C. Section 105; and *In re Bradley,* BR Ct. SC (1993).

■ The issue of *voluntariness,* however, remains somewhat in dispute. Generally, a debtor may allocate any *voluntary* payment to a creditor to any account desired. Allocation of tax payments arises most often in bankruptcy where an Internal Revenue Code Section 6672 penalty or some other trust tax liability is sought to be collected against officers and directors of a corporation as "responsible persons" who failed to ensure that the trust taxes were paid.

The general rule on allocation of payments allows such designation if the payment is *voluntary. See Muntwyler v. United States,* 703 F.2d 1030 (7th Cir.1983).

In the present case, the IRS argued that payments made by a bankrupt debtor through its plan of reorganization clearly are *not voluntary*. As support for its position the IRS cited the following cases: *United States v. Energy Resources*, 871 F.2d 223, 230 (1st Cir.1989), *aff'd* 495 U.S. 545, 110 S.Ct. 2139, 109 L.Ed.2d 580 (1990); *In re Avildsen Tools & Machines, Inc.*, 40 B.R. 253 (N.D.Ill.1984), *aff'd* 794 F.2d 1248 (7th Cir.1986); *United States v. DeBernadinis*, 395 F.Supp. 944 (D.Conn.1975), *aff'd* 538 F.2d 315 (2nd Cir.1976); *Amos v. Commissioner*, 47 TC 65, 69 (1966); and *In re Office Dynamics, Inc.*, 39 B.R. 760 (Bankr.N.D.Ga. 1984).

The debtor, however, argued among other things that the present case is a *voluntary* Chapter 11 case, that it is the debtor-in-possession who comprises the plan, and that payments made under that plan *are* voluntary. The debtor further argued that payments under a non-bankruptcy IRS "Offer in Compromise" *are* voluntary and it is stated so on the face of that document. Therefore, by comparison, payments under a debtor's Plan of Reorganization in bankruptcy likewise *are* voluntary.

Moreover, the debtor cited *Muntwyler* as distinguishing voluntary payments from involuntary payments. This distinction, reasoned the *Muntwyler* court, is not made on the basis of the presence of administrative or judicial actions alone, but rather on any action resulting in actual seizure of property or money such as a receivership.

The debtor in the present case therefore, argued that the IRS had *not* seized its assets or requested a receivership. Thus, the payments now made under the bankruptcy plan *are* voluntary. Further, argued the debtor, even though a receivership is somewhat analogous to bankruptcy, it is not synonymous to a bankruptcy, because the former is involuntary and the latter is almost always voluntary.

As to the issue of voluntariness in the present case, the court ruled that it "assumed" that the payments under this debtor's Chapter 11 Plan were *not* voluntary. The Court made no further comment on that issue.

■ The Court advised, however, that it was most interested in whether or not the requested allocation of payments was "necessary to an effective reorganization of this debtor."

The IRS argued that the requested allocation was not necessary to this debtor's reorganization efforts, because such allocation does not enhance the debtor's ability to reorganize and therefore, it is not absolutely necessary. The debtor argued that enhancing the reorganization is not synonymous with "necessary to an effective reorganization," nor is absolutely necessary synonymous with that phrase.

The President and only officer of the debtor corporation testified that at his attorney's instructions, he had written on each check for plan payments to the IRS a special designation that those payments were to be attributed to the Trust Fund portion of the debt. Additionally, he testified that he and his attorney both orally and in writing, had requested that the IRS allocate the payments accordingly. He further testified that after the corporate bankruptcy had been filed an agent for the IRS had constantly harassed him personally, both day and night, at work and at home about his personal liability regarding the Trust portion of the IRS debt, and that he could not concentrate on business operations while being personally harassed. Moreover, he testified that the harassment ceased when his attorney filed the motion which began this matter.

The Court, after hearing the above arguments, ruled that the *allocation of payments* under this debtor's plan of reorganization first to the Trust portion and then to the non-Trust portion is, in fact, *necessary to an effective reorganization* of this debtor.

■ Finally, the IRS argued that with the aforementioned allocation it would be less likely to receive *all* of its tax debt from the debtor, which, it alleged, would be contrary to its existence and to public policy.

The debtor responded by arguing that this IRS argument is the same argument it made in the *Energy Resources* case, and reminded the Court of the U.S. Supreme Court's an-

swer to the IRS in that case: "The Government is correct that, if it can apply a debtor corporation's tax payments to non-trust fund liability before trust fund liability, it stands a better chance [of collecting its full amount] because the debt that is not guaranteed will be paid off before the guaranteed debt. [However], while this result might be desirable from the Government's standpoint, it is an added protection *not specified in the Code itself.*" This Court agrees with that statement.

IT IS THEREFORE,

ORDERED, ADJUDGED AND DE-CREED That all past, present and future payments made to the IRS by this debtor-in-possession under its Chapter 11 Plan of Reorganization be first attributed to the Trust Fund portion of the debt and then to the non-trust portion after the trust portion has been paid in full.

The debtor's Motion to Modify its Plan and Disclosure Statement to incorporate the terms of this Order is granted as is the debtor's extension of time to file a Report of Substantial Consummation.