

Opinions of the United
States Court of Appeals
for the Third Circuit

1-17-1997

# In Re Michael Kaplan

Precedential or Non-Precedential:

Docket 95-5409,96-5180

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"In Re Michael Kaplan" (1997). *1997 Decisions.* Paper 15.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/15

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

Nos. 95-5409 and 96-5180

_____

IN RE:  MICHAEL KAPLAN; MORRIS KAPLAN

Debtors

THE INTERNAL REVENUE SERVICE

vs.

MICHAEL KAPLAN; MORRIS KAPLAN,

Appellants in No. 95-5409

(D.C. Civ. No. 94-cv-05656)

IN RE:  KAPLAN BUILDING SYSTEMS, INC.

Debtor

1

INTERNAL REVENUE SERVICE

vs.

KAPLAN BUILDING SYSTEMS, INC.,

Appellant in No. 96-5180

(D.C. Civ. No. 95-cv-04331)

_____

Appeal from the United States District Court

for the District of New Jersey

_____

Argued

December 10, 1996

Before:  BECKER, MANSMANN and GREENBERG, Circuit Judges.

(Filed January 17, 1997)

_____

Robert A. Baime, Esquire  (ARGUED)

Dechert, Price & Rhoads

Princeton Pike Corporate Center

P.O. Box 5218

Princeton, N.J.  08563

Joel H. Levitin

Debra D. O'Gorman

Dechert, Price & Rhoads

477 Madison Avenue

New York, NY  10022

   COUNSEL FOR APPELLANTS

Loretta C. Argrett

Assistant Attorney General

Thomas Linguanti, Esquire (ARGUED)

Gary R. Allen, Esquire

David English Carmack, Esquire

Linda E. Mosakowski, Esquire

United States Department of Justice

Tax Division

P.O. Box 502

Washington, DC   20044

   COUNSEL FOR APPELLEE

Faith S. Hochberg

United States Attorney

   OF COUNSEL FOR APPELLEE

_____

OPINION OF THE COURT

_____


MANSMANN, Circuit Judge.

In this appeal, we are presented with two decisions of
the district court dated May 18, 1995, and February 20, 1996,
which reversed the orders of the bankruptcy court on two related
bankruptcy cases. We are asked to decide whether the district
court erred in determining that the bankruptcy court was not
authorized to compel the Internal Revenue Service to reallocate
tax payments first to trust fund taxes. We find that neither 11
U.S.C. § 105 nor the Supreme Court's decision in United States v.
Energy Resources Co., Inc., 495 U.S. 545 (1990), authorized the
bankruptcy court to order the Internal Revenue Service to
reallocate tax payments under the particular facts here.
Accordingly, we will affirm the decisions of the district court.


I.

We feel compelled to set forth the facts in detail
because these bankruptcy cases are so heavily fact-intensive.

This consolidated appeal arises from two separate but
related Chapter 11 bankruptcy petitions filed by Michael and
Morris Kaplan and Kaplan Building Systems, Inc. ("KBS"). KBS
is a Pennsylvania corporation formed for the sole purpose of
acquiring and operating a modular home manufacturing business.

4

Two brothers, Michael and Morris Kaplan, organized KBS and, at all relevant times, were its sole owners. During 1990, KBS made only one payment of employment taxes in the approximate amount of $200,000. That payment was not accompanied by a quarterly return. For the four quarters of 1990, KBS failed to file timely returns and to pay to the United States approximately $2 million in federal employment taxes. Of this amount, $1,564,468 were "trust fund" taxes.[1]

On February 11, 1991, Michael and Morris Kaplan filed two separate Chapter 11 petitions with the United States Bankruptcy Court for the District of New Jersey, which were later consolidated. KBS did not file for bankruptcy at that time. Although the Kaplans owned or were partners in approximately 89 entities including KBS, they wanted to avoid preparing petitions and paying filing fees with respect to each of the entities. The Kaplans thus sought an injunction under 11 U.S.C. § 105 to enjoin specific creditors from instituting civil actions against the "non-filing" Kaplan businesses. Although a number of KBS's other creditors were named in the injunctions, the IRS was not one of the defendant-creditors named in the orders, nor did the IRS participate in the matter.[2] Invoking its powers under section

1.      Trust fund taxes refer to the employees' share of FICA and FUTA taxes required to be withheld by the employer and held in trust for the federal government pursuant to 26 U.S.C. § 7501(a). Under I.R.C. § 6672, the IRS may collect unpaid trust fund taxes directly from the employer's officers or employees who are responsible for collecting the tax. These individuals are commonly referred to as "responsible persons."

2.      In their Brief in Support of Debtors' Motion to Compel the Internal Revenue Service to Reallocate Certain Payments, the Kaplans indicated that, at some later time but prior to June 15,

5

105, the bankruptcy court enjoined all of the named defendant-creditors from proceeding to litigate claims against the non-filing Kaplan entities. The injunction dissolved ninety days after the effective date of the Kaplans' plan of reorganization.

In March of 1991, KBS filed its employment tax returns for the four quarters of 1990 and the corresponding taxes were assessed against KBS. In lieu of instituting formal collection proceedings against KBS, the revenue officer determined that KBS could make installment payments to satisfy the debts, provided the Kaplans executed Forms 2751--Proposed Assessment of 100 Percent Penalty--and consented to the assessment and collection of a responsible person's penalty in connection with KBS's unpaid trust fund taxes for 1990. The Kaplans executed the necessary forms, thereby agreeing that the responsible person penalty could be assessed against them on or before December 31, 1995.

KBS and the IRS entered into two installment agreements. The first installment agreement provided that KBS would pay the IRS $30,000 per month from October, 1991 through December, 1991; $35,000 per month from January, 1992, through March, 1992; $40,000 per month from April through June, 1992; and $50,000 from July, 1992, until December, 1994, when the balance would be paid in full. Although the installment agreement contained several conditions, it did not address the allocation (..continued) 1993, the IRS filed a proof of claim asserting an unliquidated KBS tax liability against the Kaplans in their individual bankruptcies. The Kaplans filed a motion to expunge the IRS's claim, giving actual notice to the IRS; the IRS did not oppose. Consequently, the bankruptcy court entered an order on June 15, 1993, expunging the IRS's claim.

6

of payments.  By the end of 1993, KBS defaulted on the first installment agreement.

A second installment agreement was drawn up in May, 1994, which required KBS to make monthly payments of $60,000 from July of 1994 to March of 1995, and $100,000 from April of 1995 until the debt was paid in full.  The installment agreement form, which had been revised in January, 1993, provided as one of the conditions that "[a]ll payments will be applied in the best interest of the United States."  On May 27, 1994, the general counsel for the Kaplan companies wrote to the revenue officer advising him that before executing the installment agreement, KBS deleted the language on the form providing that payments will be applied in the best interest of the United States.  The revenue officer informed KBS's counsel that the agreement could not be accepted by the IRS with the deletion of this condition.  KBS reversed the deletion, but reserved its right to further contest this allocation.  The IRS executed the second installment agreement on July 6, 1994 and KBS made payments through at least September of 1994.  The Kaplans claim they have personally funded KBS's tax liability payments in an amount in excess of $1 million.

On January 29, 1993, the bankruptcy court confirmed the Kaplans' first amended plan of reorganization.  The confirmed plan dealt with some debts against the non-filing Kaplan entities.  With respect to tax claims against KBS, the plan provided:

Notwithstanding anything in this Plan to the contrary,
Tax Claims against Kaplan Building Systems,

> Inc. shall be paid in accordance with and
> pursuant to installment agreements with
> Internal Revenue Service.[3]

On July 29, 1994, the Kaplans filed a motion in their individual bankruptcy cases to compel the IRS to reallocate the tax payments made by KBS (but funded by the Kaplans) to trust fund obligations.[4] Without such reallocation, the Kaplans remain liable for 100% of KBs's unpaid trust fund taxes. The bankruptcy court held a hearing at which the Kaplans argued that because reallocating the payments to KBS's trust fund liabilities would "enhance the probability the Kaplans will fully consummate their confirmed Plan which requires payments to be made to creditors over time," the bankruptcy court has the authority to and should compel the IRS to change the allocation of KBS's payments that had been funded by the Kaplans, based on the Supreme Court's holding in United States v. Energy Resources Co., Inc., 495 U.S. 545 (1990). The government opposed the motion, asserting that Energy Resources was inapposite here because the corporation was not a debtor in the Kaplans' bankruptcy proceedings and whatever the effect on KBS, the allocation of tax payments would not affect the reorganization of the Kaplans, who were the only debtors in the case. The bankruptcy court concluded that this case was completely analogous to Energy Resources, even though

---

3.        Article III, Section 3.1(B)(ii) of Debtors' First Amended Joint Plan of Reorganization.

4.        The KBS tax payments were made prior to the execution of the first installment agreement; these payments were also made pursuant to the first and second installment agreement s. Thus, the time period involved runs from 1990 to September, 1994.

the structure here was not a textbook structure. Because it found that the reallocation of KBS's taxes was necessary for the Kaplans' reorganization, the bankruptcy court entered an order directing the IRS to reallocate the prior payments to trust fund taxes.

The IRS appealed the bankruptcy court's order to the district court. On May 18, 1995, the district court issued an order reversing the decision of the bankruptcy court, finding that because KBS was not a debtor in bankruptcy, the bankruptcy court was not authorized to order the IRS to reallocate payments made by KBS. The district court noted that unlike Energy Resources, the bankruptcy court here lacked jurisdiction over KBS and, therefore, was without the power to order reallocation of the tax payments under 11 U.S.C. §§ 1123, 1129 and 105, as those sections were not applicable. The district court further held that the bankruptcy court could order retroactive allocation of tax payments.[5] In dicta, the district court commented that KBS could file its own Chapter 11 petition, thereby subjecting itself to the bankruptcy court's jurisdiction. The Kaplans filed a timely appeal to this court, which was stayed on September 12, 1995, pending the district court's ruling on the same issue in the KBS bankruptcy case.

---

5. In support of this holding, the district court cited In re Deer Park, Inc., 10 F.3d 1478 (9th Cir. 1993); In re Flo-Lizer, Inc., 164 B.R. 79 (Bankr. S.D. Ohio 1993), aff'd, 164 B.R. 749 (S.D. Ohio 1994); and In re M.C. Tooling Consultants, 165 B.R. 590 (Bankr. D.S.C. 1993).

On June 2, 1995, KBS filed its own bankruptcy petition under Chapter 11 of the Bankruptcy Code. On that same date, KBS filed several motions with the bankruptcy court, one of which asked the court to compel the IRS to reallocate the tax payments funded by the Kaplans on behalf of KBS to trust fund taxes. KBS argued that reallocation of the tax payments was necessary for its successful reorganization, in that it would induce the Kaplans to provide KBS with new emergency funding necessary for the continued operation of KBS. The IRS opposed the motion on the basis that the bankruptcy court lacked authority to reallocate, arguing that all of the payments at issue had been made pre-petition and that the debtor had failed to designate the manner in which they were to be applied. The IRS applied the payments in accordance with IRS written policy, which requires that payments received be applied in a manner consistent with the best interests of the government, unless otherwise designated.

Having determined that it had jurisdiction over KBS, the bankruptcy court considered whether it had the authority to compel the IRS to reallocate the tax payments under Energy Resources. Concluding that the reallocation was necessary to KBS's successful reorganization, the bankruptcy court entered an order, with retroactive effect, directing the IRS to reallocate the tax payments made by KBS to trust fund taxes.

The IRS appealed that order to the district court. In reversing the decision of the bankruptcy court, the district court held that the Supreme Court's holding in Energy Resources did not displace the rule of law that the IRS may designate

10

voluntary payments in its best interests when the debtor fails to make a designation.  Having found that KBS never designated the manner in which its tax payments would be allocated, the district court found that the IRS was free to apply the tax payments towards KBS's outstanding corporate income tax.

On March 20, 1996, KBS filed a notice of appeal of the district court's order and moved to consolidate the KBS appeal, No. 96-5180, with the appeal in the Kaplans' bankruptcies, No. 95-5409.  We granted that motion and consolidated the cases on June 10, 1996.  We have jurisdiction over these consolidated appeals pursuant to 28 U.S.C. §§ 158(d) and 1291.

11

II.

At the core of the district court's ruling in the Kaplans' bankruptcy cases stands its finding that the bankruptcy court lacked jurisdiction over KBS. Thus, we turn initially to the issue of whether the bankruptcy court had jurisdiction over KBS in the Kaplans' bankruptcy cases. We begin our analysis by examining 28 U.S.C. § 1334.

Section 1334(b) provides in relevant part that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b) (1990). The bankruptcy courts, in turn, obtain jurisdiction by operation of 28 U.S.C. § 157, which allows the district courts to refer, to the bankruptcy courts, cases over which the district courts have jurisdiction pursuant to section 1334. Quattrone Accountants, Inc. v. Internal Revenue Service, 895 F.2d 921, 926 n.3 (3d Cir. 1990).

We have held that in a case involving non-debtors, the bankruptcy court's jurisdiction is to be determined solely by 28 U.S.C. § 1334(b). Id. at 926. The Sixth Circuit has agreed with our conclusion. In re Wolverine Radio Co., 930 F.2d 1132, 1140 (6th Cir. 1991). But cf. United States v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir. 1986).[6] The dispute at issue here

6. In United States v. Huckabee Auto Co., 783 F.2d 1546, 1549 (11th Cir. 1986), the court of appeals refused to extend the jurisdiction of the bankruptcy court to the section 6672 liabilities of the taxpayers who were not debtors under the Bankruptcy Code. The court found that because the liability imposed under section 6672 was separate and distinct from that levied on the employer under sections 3102 and 3402 of the

12

arose between KBS and the IRS, two non-debtors, which the Kaplans are attempting to bring within the jurisdiction of the bankruptcy court as a proceeding[7] related to their Chapter 11 bankruptcy case. Thus, we must turn to the meaning of the terms, "related to," in light of our explanation in Quattrone Accountants and Pacor, Inc. v. Higgins, 743 F.2d 984 (3d Cir. 1984).

In Quattrone Accountants, we were asked to decide whether, inter alia, the bankruptcy court had jurisdiction pursuant to 28 U.S.C. § 1334 and 11 U.S.C. § 505[8] to determine a

(..continued)
Internal Revenue Code, it was irrelevant that the section 6672 liability, if assessed against the responsible persons, would adversely affect the corporate debtor's reorganization. Id. at 1548-49 (citations omitted).

In Huckabee Auto, the corporation was the debtor and taxpayer; here, the situation is reversed: the responsible persons, i.e., the Kaplans, are the debtors and the corporation, a non-debtor, is the taxpayer. In addition, the court of appeals in Huckabee Auto failed to consider the bankruptcy court's jurisdiction under 28 U.S.C. § 1334(b).

7. The dispute between the IRS and KBS constitutes a civil "proceeding" as that term is used in 28 U.S.C. § 1334. Proceeding "is used in a broad sense, referring to `[a]nything that occurs within a case,' including contested and uncontested matters." Melodie Freeman-Barney, Notes and Comments, Jurisdiction Under the Bankruptcy Amendments of 1984: Summing Up the Factors, 22 Tulsa L.J. 167, 180 (1986) (citing Collier on Bankruptcy (MB ¶ 3.01[1][c][ii] (15th ed. 1986)). The legislative history to the Bankruptcy Reform Act of 1978 confirms that the term "proceeding" should be broadly interpreted. H.R. Rep. No. 598, 95th Cong., 2d Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6400-6401.

8. Section 505(a)(1) provides in relevant part:

. . . the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

non-debtor's tax liability under section 6672 of the Internal Revenue Code.  Concluding that section 505 did not address a situation involving non-debtors[9] and, therefore, neither limited nor granted jurisdiction, we turned to section 1334 to resolve the issue of the bankruptcy court's jurisdiction.  895 F.2d at 925-26.

We examined the "related to" language of section 1334 by looking at our previous explanation of those terms in Pacor, Inc. v. Higgins, supra.[10]  In Pacor, we explained that under section 1334, a civil matter is "related to" a bankruptcy proceeding when "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."  743 F.2d at 994 (citations omitted).  We then stated that "[a]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  Id.  Our analysis of the "related to" language of section 1334(b)

9.        The IRS assessed a section 6672 responsible person penalty against the debtor, Quattrone Accountants, for failing to pay withholding taxes on behalf of its client, United Dairy Farmers Cooperative Association (UDF).  Philip Quattrone, part owner and principal officer of the debtor, filed a complaint requesting the bankruptcy court to determine his section 6672 tax liability, as well as that of the debtor.

10.        In Pacor, we held that a personal injury suit in which the defendant filed a third party claim seeking indemnification against the debtor, JohnsManville, was not related to the JohnsManville bankruptcy, reasoning that the outcome of the original personal injury action would not bind JohnsManville until a third party action was actually brought and tried.  743 F.2d at 995.

14

was followed by the Supreme Court in Celotex Corp. v. Edwards, ___ U.S. ___, 115 S. Ct. 1493, 1498-99 (1995).

Applying these decisions to the facts of this case, we conclude that the dispute between the IRS and KBS is related to the Kaplans' bankruptcy proceeding. Here the debtors, Michael and Morris Kaplan, agreed to section 6672 responsible person liability, in effect guaranteeing that KBS's trust fund taxes would be paid in full. By virtue of their agreement with the IRS, if KBS failed to pay its trust fund taxes in full, the Kaplans would automatically be liable for the shortfall. If the IRS is allowed to allocate the pre-petition tax payments it received to non-trust fund taxes, there is no effect on the Kaplans -- they are still 100% liable for the shortfall. If, however, the IRS is not permitted to designate how the payments will be applied, and the bankruptcy court is allowed to order the IRS to allocate the pre-petition payments to trust fund taxes first, then the Kaplans' responsible persons liability is reduced to the extent that the trust fund tax liability of KBS is likewise reduced. Thus, the outcome of the dispute between KBS and the IRS could conceivably affect, in a positive manner, the Kaplans' estate in bankruptcy.

We find, therefore, that the bankruptcy court had jurisdiction over the dispute between KBS and the IRS.

III.

Although we have determined that the bankruptcy court had jurisdiction over the non-debtors pursuant to section 1334,

15

our inquiry does not end there.[11]  Notwithstanding the bankruptcy

court's jurisdiction, we must examine whether the bankruptcy

court was authorized to issue the order to compel allocation of

tax payments under the broad grant of equitable powers in 11

U.S.C. § 105.[12]

> Section 105(a) states in pertinent part:
> The court may issue any order, process, or
> judgment that is necessary or appropriate to
> carry out the provisions of this title.[13]

That the bankruptcy court has the power under section 105 to

enjoin creditors from proceeding in a state court against third

parties where failure to enjoin would affect the bankruptcy

estate has been recognized by numerous bankruptcy courts and two

courts of appeals.[14]  Moreover, the Supreme Court in Energy

11.      We note that while the district court found incorrectly that the bankruptcy court lacked jurisdiction over KBS in the Kaplans' bankruptcy, this error is not fatal to its decision.

12.      In In re Cardinal Industries, Inc., 109 B.R. 748, 752 (Bankr. S.D. Oh. 1989), the bankruptcy court held that jurisdiction under section 1334 was not sufficient by itself to determine whether an injunction should issue; but rather, the court must examine, under 11 U.S.C. § 105(a), whether the usual standards for injunctive relief are met.

13.      The legislative history to section 105 is sparse.  The House Report states merely that section 105 is similar in effect to the All Writs Statute, 28 U.S.C. § 1651.  H.R. Rep. 595, 95th Cong., 2d Sess. (1978), reprinted in 1978 U.S.C.C.A.N. 6273.  The legislative history further provides that section 105 authorizes a court of the United States to stay a state court action.  Id. at 6274.

14.      In re Monroe Well Service, Inc., 67 B.R. 746, 750-51 (Bankr. E.D.Pa. 1986); In re Otero Mills, 25 B.R. 1018, 1021-1022 (D.N.M. 1982); A.H. Robins Co. v. Piccinin, 788 F.2d 994, 1002 (4th Cir.), cert. den., 479 U.S. 876 (1986).  See also, National Labor Relations Board v. Superior Forwarding, Inc., 762 F.2d 695, 698 (8th Cir. 1985) (Bankruptcy court is empowered under section 105 to enjoin federal regulatory proceedings when those proceedings would threaten the assets of the debtor's estate).

<u>Resources</u> found the Bankruptcy Code implicitly authorized the bankruptcy courts to approve reorganization plans designating tax payments as either trust fund or non-trust fund, based on the bankruptcy courts' residual authority to approve reorganization plans under section 1123(b)(5) and 1129 of the Bankruptcy Code, and on the statutory directive of section 105.  495 U.S. at 549.

<u>Energy Resources</u> involved two corporations which filed petitions for reorganization under Chapter 11 of the Bankruptcy Code:  Newport Offshore, Ltd. (Newport) and Energy Resources Co., Inc. (Energy Resources).  In the Newport bankruptcy, the IRS objected unsuccessfully to a provision in the reorganization plan which stated that Newport's tax payments would be applied to extinguish all trust fund tax liabilities prior to paying the non-trust fund portion of the tax liability.  The IRS appealed to the district court, which reversed the decision of the bankruptcy court.  The debtor appealed to the Court of Appeals for the First Circuit.

In the Energy Resources bankruptcy case, the bankruptcy court approved a reorganization plan which created a special trust to fund the corporation's federal tax liability.  When the IRS refused to apply a tax payment out of the special trust to Energy Resources' trust fund taxes, the trustee successfully petitioned the bankruptcy court to order the IRS to allocate the payment to trust fund taxes.  The IRS appealed this order to the district court, which affirmed the bankruptcy court.   The IRS then filed an appeal to the Court of Appeals for the First

17

Circuit.  The Newport and Energy Resources cases were consolidated on appeal.

The court of appeals reversed in In re Newport Offshore Ltd. and affirmed in In re Energy Resources Co.[15]  Initially, the court of appeals examined the characterization of tax payments made pursuant to a Chapter 11 reorganization plan as "voluntary" or "involuntary."[16]  Although the court of appeals concluded that the payments were involuntary, deferring to the IRS's interpretation of its own rules, it held that the "Bankruptcy Courts nevertheless had the authority to order the IRS to apply an `involuntary' payment made by a Chapter 11 debtor to trust fund tax liabilities if the Bankruptcy Court concluded that this designation was necessary to ensure the success of the reorganization."  871 F.2d at 230-34.

The Supreme Court affirmed the judgment of the court of appeals, holding that regardless of whether the payments are properly characterized as "involuntary", a bankruptcy court has the authority to order the IRS to apply tax payments made by Chapter 11 debtor corporations to trust fund liabilities if the

---

15.     In re Energy Resources Co., Inc., 871 F.2d 223 (1st Cir. 1989).

16.     IRS policy allows taxpayers who "voluntarily" pay their tax liability to designate the manner in which the tax payments will be applied.  Energy Resources, 495 U.S. at 548 (citations omitted).  Traditionally, a tax payment has been considered "involuntary" when it is made to "agents of the United States as a result of distraint or levy or from a legal proceeding in which the Government is seeking to collect its delinquent taxes or file a claim therefor."  United States v. Pepperman, 976 F.2d 123, 127 (3d Cir. 1992) (citing Amos V. Commissioner, 47 T.C. 65, 69 (1966)).

bankruptcy court determines that this designation is necessary to the success of a reorganization plan. 495 U.S. at 548-49. To find such authority for the bankruptcy court, the Court looked to sections 1123, 1129, and 105 of the Bankruptcy Code. Under sections 1123(b)(5) and 1129, the Court found that the Code "grant[ed] the bankruptcy courts residual authority to approve reorganization plans including `any . . . appropriate provision not inconsistent with the applicable provisions of this title.'" Id. at 549. Turning to section 105, the Court noted that the Code also provides that bankruptcy courts may "`issue any order, process, or judgment that is necessary or appropriate to carry out the provisions' of the Code." Id. (citing 11 U.S.C. § 105(a)). The Court further noted that these "statutory directives are consistent with the traditional understanding that bankruptcy courts, as courts of equity, have broad authority to modify creditor-debtor relationships." Id. (citations omitted).

The Court rejected the government's argument that bankruptcy court orders directing allocation to trust fund taxes conflict with sections 507(a)(7), 523(a)(1)(A), 1129(a)(11), and 1129(a)(9)(C) of the Bankruptcy Code, provisions which protect the government's ability to collect delinquent taxes. The Court found that the restrictions in those sections of the Code do not address the bankruptcy court's ability to designate whether tax payments are to be applied to trust fund or non-trust fund tax liabilities and, thus, did not preclude the court from issuing the type of orders involved here. Id. at 550.

19

The Court found equally unpersuasive the government's argument that it stands in a better position to have all of its debt discharged if the debtor corporation's tax payments are first applied to non-trust fund taxes because the debt that is not guaranteed will be paid off first. The Court stated that while from the government's viewpoint this result is more desirable, it is an added protection not provided for in the Code itself. Id. Finally, the government contended that the bankruptcy court's orders contravened section 6672 of the Internal Revenue Code, which permits the IRS to collect unpaid trust fund taxes directly from the "responsible" individuals. The government reasoned that if the IRS cannot designate a debtor corporation's tax payments as non-trust fund, the debtor might only be able to pay the guaranteed debt, leaving the government at risk for non-trust fund taxes. Discarding this argument as well, the Supreme Court found that section 6672, by its terms, does not protect against this eventuality. Id. at 551.

Despite the Supreme Court's finding that the residual authority of the bankruptcy court under sections 1123, 1129 and 105(a) authorized the reallocation of tax payments, Energy Resources does not change the result here. The facts in the Kaplans' bankruptcy cases simply do not provide the bankruptcy court with the authority to grant the relief sought by the Kaplans. First and foremost, KBS, the taxpayer, was not the debtor. Indeed, we agree with the IRS that Energy Resources does not reach the situation where a third party might benefit: the Kaplans could not be deemed necessary to the success of KBS's

20

plan because at the time the payments were made, KBS did not have a reorganization plan.[17] In addition, as KBS was not a debtor prior to June 1995, the IRS was not afforded the usual protections in a Chapter 11 reorganization: a priority for specified tax claims, including trust fund taxes, and a provision making these tax debts nondischargeable, 11 U.S.C. §§ 507(a)(7), 523(a)(1)(A); the requirement that the bankruptcy court assure itself that the reorganization will succeed, 11 U.S.C. § 1129(a)(11), making it more likely that the IRS will collect the tax liability; and a provision that the tax debt must be paid off within six years, 11 U.S.C. § 1129(a)(9)(C).

As we stated in Pepperman, "the Court in Energy Resources consistently linked its holding with the fact of reorganization and the debtor's need for rehabilitation." 976 F.2d at 130. Because KBS had not filed its own Chapter 11 petition, the bankruptcy court did not have before it all of the

_____

17. Although KBS and some of its creditors were being reorganized under the Kaplans' bankruptcies, the IRS was not listed as a creditor of KBS in the schedule of defendants in the section 105 stay litigation. Moreover, the Kaplans' reorganization plan provided that the tax claims against KBS would be paid in accordance with the installment agreements with the IRS. We note, however, that these installment agreements were voluntary agreements which KBS could, and eventually did, default on. The fact that the Kaplans never sought the bankruptcy court's intervention with regard to the IRS's tax claims against KBS and, indeed, specifically provided in their plan that the normal rule pertaining to payment of allowed tax claims (i.e., allowed tax claims must be paid in full within fifteen days after the effective date of the plan or, pursuant to 11 U.S.C. § 1129(a)(9)(C), paid in full over six years from the earlier of the assessment date or plan effective date), did not apply to the IRS's tax claims against KBS, mandates the conclusion that the bankruptcy court lacked authority to order the reallocation of KBS's tax payments.

claims and, therefore, could not have made an appropriate determination as to whether the KBS reorganization was likely to succeed. Since this determination is a prerequisite to the Court's holding in Energy Resources, the bankruptcy court lacked the authority to order the IRS to reallocate tax payments in the Kaplans' bankruptcies. We observed in Pepperman that "section 105 does not `give the court the power to create substantive rights that would otherwise be unavailable under the Code,'" noting that Energy Resources does nothing to undermine this observation. 976 F.2d at 131 (citations omitted). Further, "`[t]he fact that a [bankruptcy] proceeding is equitable does not give the judge a free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be.'" Id. (quoting Matter of Chicago, Milwaukee, St. Paul & Pac. R.R., 791 F.2d 524, 528 (7th Cir. 1986)).

Because KBS, the taxpayer, was not a debtor under the facts here,[18] the bankruptcy court was precluded from making an appropriate determination regarding the likelihood of KBS's successful reorganization as required by Energy Resources. We hold, therefore, that the bankruptcy court lacked authority under section 105 to order the IRS to allocate KBS's tax payments in the Kaplans' bankruptcy.

18.     The IRS did not file a proof of claim against KBS in the Kaplans' bankruptcies. KBS was organized as a corporation, not a partnership. As a separate legal entity, KBS, in order to avail itself of the full protections and powers of the bankruptcy court, must itself be a debtor. See, In re FTL, Inc., 152 B.R. 61 (Bankr. E.D. Va. 1993). The tax payments at issue were pre-petition and not made pursuant to a reorganization plan.

22

IV.

Likewise in KBS's bankruptcy, we are compelled to find that the bankruptcy court lacked authority under section 105 to order the IRS to reallocate tax payments to trust fund taxes first. The broad powers granted to the bankruptcy court under section 105 are insufficient alone to authorize a retroactive allocation of pre-petition tax payments. Pepperman, 976 F.2d at 131 ("section 105 does not `give the court the power to create substantive rights that would otherwise be unavailable under the Code.'") (citations omitted). The bankruptcy court's equitable powers under section 105 are not triggered where, like the situation before us, the requirements of Energy Resources have not been met.[19] Indeed, since a reorganization plan was not filed in the KBS bankruptcy, the bankruptcy court had no basis upon which to exercise its equitable authority under section 105.[20]

We agree with the following inquiry set forth by the Court of Appeals for the First Circuit to be made by the

19.     When the bankruptcy court here determined that reallocation was necessary to the successful reorganization of KBS, it did not have before it a plan of reorganization. In Energy Resources, a reorganization plan existed under 11 U.S.C. §§ 1123 and 1129. In that situation, the bankruptcy court has the authority to oversee the reorganization and, under § 105, has the equitable power to do what is necessary to get the plan confirmed.

20.     Thus, the bankruptcy court could not have assured itself, as it was required to do under 11 U.S.C. § 1129(a)(11), that the reorganization plan would succeed; and that the debtor would take no more than six years within which to structure the tax payments, 11 U.S.C. § 1129(a)(9)(C).

23

bankruptcy court when assessing whether reallocation for tax payments is necessary to the successful reorganization of the debtor:

upon consideration of the reorganization plan as a whole, in so far as the particular structure or allocation of payments increases the risk that the IRS may not collect the total tax debt, is that risk nonetheless justified by an offsetting increased likelihood of rehabilitation, i.e., increased likelihood of payment to creditors who might otherwise lose their money?

In re Energy Resources Co., Inc., 871 F.2d at 234. It is clear from the record that the bankruptcy court in KBS's case did not undertake to perform this analysis. Thus, the holding by the Supreme Court in Energy Resources, which clearly took into consideration the existence of a reorganization plan, does not control the resolution of this case.[21]

We further note that all of the cases cited by KBS in support of retroactive allocation are factually distinguishable as they involved post-petition, post-confirmation tax payments.[22] Appellants do not cite any authority which would support a retroactive allocation involving pre-petition payments not made

_____

21. The fact that the IRS had not challenged the bankruptcy court's determination that reallocation was necessary for a successful reorganization is not dispositive here, as that determination was prematurely reached.

22. In addition to Energy Resources, the appellants rely on In re Deer Park, Inc., 10 F.3d 1478 (9th Cir. 1993), and In re Flo-Lizer, Inc., 164 B.R. 79 (Bankr. S.D. Ohio 1993), to support their contention that the allocation order may be applied retroactively. In all three of these cases, the tax payments at issue were made post-petition, pursuant to an approved plan of reorganization.

pursuant to a reorganization plan. Moreover, in asking us to approve the retroactive allocation of pre-petition tax payments, KBS is, in effect, asking us to extend the time applicable to preferential transfers under 11 U.S.C. § 547 well beyond that allowed by the Bankruptcy Code. We find no basis in the Bankruptcy Code or other legal authority which would justify this treatment. Accordingly, we find that retroactive allocation of pre-petition tax payments is not permitted.[23]

Because we find that Energy Resources does not apply here, we must turn to the common law regarding voluntary payments. The parties have agreed that the tax payments at issue were made voluntarily. "IRS policy has long permitted a taxpayer who `voluntarily' submits a payment to the IRS to designate the tax liability . . . to which the payment will apply." In re Energy Resources Co., Inc., 871 F.2d at 227 (citing Rev. Rul. 79-284, 1979-2 C.B. 83; Slodov v. United States, 436 U.S. 238 (1978)) (other citations omitted); Pepperman, 976 F.2d at 127. This policy reflects the generally recognized common law rule between debtors and creditors that "the debtor may indicate which debt it intends to pay when it voluntarily submits a payment to a creditor, but may not dictate the application of funds that the creditor involuntarily collects from it." Pepperman, 976 F.2d at 127 (citing O'Dell v. United States, 326 F.2d 451, 456 (10th Cir. 1964)) (citation omitted).

---

23. To the extent that the district court in the Kaplans' bankruptcy cases ruled that retroactive allocation was allowed, that conclusion constitutes legal error.

The long-standing policy of the IRS with regard to voluntary payments is reflected in IRS Policy Statement P-5-60, which provides:

In determining the amount of the 100 percent penalty to be assessed in connection with employment taxes, any payment made on the corporate account involved is deemed to represent payment of the employer portion of the liability (including assessed and accrued penalty and interest) unless there was some specific designation to the contrary by the taxpayer. The taxpayer, of course, has no right of designation in the case of collections resulting from enforced collection measures. To the extent partial payments exceed the employer portion of the tax liability, they are considered as being applied against the trust fund portion of the assessment.

1 Administration, CCH Internal Revenue Manual at 1305-15 (Mar. 1981). Rev. Rul. 79-284, 1979-2 C.B. 83, was promulgated in agreement with this policy. Kinnie v. United States, 771 F.Supp. 842, 853 (E.D. Mich. 1991), aff'd, 994 F.2d 279 (6th Cir. 1993). Rev. Rul. 79-284, modifying Rev. Rul. 73-305,[24] 1973-2 C.B.43, states that a taxpayer must provide specific written instructions

24.     Rev. Rul. 73-305, which provides that where no specific instructions are given by the taxpayer as to the application of a partial tax payment, the amount of the payment will be applied to tax, penalty, and interest, in that order, did not apply to withheld employment taxes. Rev. Rul. 79-284 made Rev. Rul. 73-305 applicable to withheld employment taxes by providing:

Rev. Rule 73-305 applies to withheld employment taxes . . . where the taxpayer provides specific written instructions for the application of a voluntary partial payment. If no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes . . . in a manner serving its best interest.

for the application of a voluntary partial payment of withheld employment taxes.

Revenue rulings are entitled to great deference, but courts may disregard them if they conflict with the statute they purport to interpret or its legislative history, or if they are otherwise unreasonable. Geisinger Health Plan v. C.I.R., 985 F.2d 1210, 1216 (3d Cir. 1993) (citations omitted); Kinnie v. United States, 994 F.2d 279, 286 (6th Cir. 1993); Amato v. Western Union Intern, Inc., 773 F.2d 1402, 1411 (2d Cir. 1985); Certified Stainless Services, Inc. v. United States, 736 F.2d 1383, 1386 (9th Cir. 1984). The Court of Appeals for the Sixth Circuit in Kinnie specifically found that the IRS's interpretation of Rev. Rul. 79-284 was not unreasonable, nor did it conflict with any specific statute. 994 F.2d at 287. The court of appeals further found that requiring the designation to be in writing serves an important purpose: it prevents litigation over various oral statements and understandings. Id. Accordingly, the court upheld the IRS's application of voluntary tax payments in the best interest of the government absent a written instruction from the taxpayer. Id. See also, Slodov v. United States, 436 U.S. 238, 252 n. 15 (1978) (acknowledging IRS Policy Statement P-5-60 prevails unless the government is notified in writing that taxes are to be applied in a different manner).

The crucial issue before us is what constitutes an effective designation where voluntary payments are involved. KBS would have us find that it effectively designated its payments to

27

be applied first to trust fund taxes because it had an "understanding" with the IRS that payments were to be applied in that manner and because the IRS failed to notify them to the contrary. KBS further argues that to be effective, the designation need not be in writing. The weight of authority, however, goes against this argument. In addition, the cases cited by KBS to support their argument that the designation need not be in writing are factually distinguishable.[25]

We also reject KBS's contention that the language of the first installment agreement is consistent with its belief that payments were being applied to trust fund taxes first. While it is true that the first installment agreement does not contain any provisions contrary to the Kaplans' and KBS's beliefs that the payments would be applied first to trust fund taxes, this fact alone does not obviate the requirement that the taxpayers provide a written designation contemporaneously with their payment.

---

25.     Freck v. I.R.S., 37 F.3d 986, 994 (3d Cir. 1994) (Taxpayer did not have an opportunity to designate because tax payments were made by a third party); McKenzie v. United States, 536 F.2d 726, 730 (7th Cir. 1976) (Bankruptcy Court found evidence established IRS agent told taxpayer he would apply payments first to trust fund taxes and, therefore, it was not necessary for taxpayer to give specific instructions or directions); In re Mallory, 32 B.R. 73, 74 (Bankr. D. Colo. 1983) (Even though government admitted that designation under Rev. Rul. 73-305 can be oral if the designation is made when the payment is tendered, bankruptcy court found no "specific directions" were given with the tender of payment); In re T.M. Products, 118 B.R. 131, 134 (Bankr. S.D. Fla. 1990) (where IRS's efforts and the court orders were specifically directed to the payment of trust fund taxes, the bankruptcy court found that the taxpayer was entitled to designate and, thus, the IRS could not apply payments to non-trust fund taxes after it learned that reorganization was no longer possible).

28

In our view, the record clearly establishes that a designation, written or otherwise, was not made with respect to any of the payments at issue. Undeniably, at the September 26, 1994, hearing before the bankruptcy court, counsel for the Kaplans clarified that there was no written agreement to allocate tax payments to trust fund liabilities first, nor was there a binding oral agreement. In addition, the evidence suggests that a tax return was not filed with the 1990 payment,[26] and that a designation did not accompany either the payments made before the first installment agreement, or those made pursuant to the installment agreements.

In order to prevail in the absence of a written designation, KBS must show that the IRS assured it that the payments would be allocated to trust fund taxes first, thereby equitably estopping the IRS from changing the allocation at this late date. The evidence of record, however, does not suggest that the IRS agreed to apply KBS's payments to trust fund taxes first, nor does it show that the Kaplans were led to believe the IRS was not contesting designation requests. Other than the statements of the Kaplans, there is no evidence to suggest that the designation requests were, in fact, made.

In support of its equitable estoppel argument, KBS cites In re Jones, 181 B.R. 538, 543-44 (D. Kansas 1995). That

26.    A tax return accompanying a payment is considered a written designation to apply the payment as shown on the return; a payment received without a return is considered undesignated and is applied first to the employer's non-trust fund taxes. Internal Revenue Manual 56(18)3.1 (11-21-89).

29

case is distinguishable inasmuch as the Chapter 13 debtor had an oral agreement with a specifically identified IRS agent. The district court found that there was a running dialogue between the agent and the debtor in which the agent made it clear to the debtor that the IRS was interested in initially collecting the payroll withholding taxes and provided the debtor with an incentive to make these payments. The district court further found that the actions of the IRS gave the debtor strong reason to believe that his payment would be applied to his withholding taxes. The district court held that the debtor, having shown that the elements of equitable estoppel were met,[27] was entitled to have his payment credited to his withholding tax liability.

Unlike In re Jones, the taxpayers here have not produced any evidence to suggest that the IRS engaged in conduct which could have led the Kaplans and KBS to believe that their tax payments were being applied to trust fund taxes first. KBS's equitable estoppel argument, therefore, fails.

Accordingly, we find that KBS failed to designate that its payments be applied to trust fund taxes first. The IRS was allowed, therefore, to apply the tax payments in the best interests of the government.

_____

27.     The traditional elements of equitable estoppel are: "(1) the party to be estopped must have known the facts; (2) the party to be estopped must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe it was so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely on the other party's conduct to his injury. In re Jones, 181 B.R. 538, 543 (D. Kansas 1995) (citing Penny v. Giuffrida, 897 F.2d 1543, 1545-46 (10th Cir. 1990).

30

V.

For the reasons set forth above, we will affirm the decisions of the district court.